## Norfolk

## CHRISTOPHER FUNDERBURK

v.

## COMMONWEALTH OF VIRGINIA

No. 0134-87-1

Decided May 17, 1988

COUNSEL

Stuart R. Hays, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.** — Christopher Funderburk (appellant) appeals a judgment of the Circuit Court of the City of Chesapeake (trial court) which approved a jury verdict convicting him of second degree murder. He argues that the trial court erred in allowing the forensic serologist to testify for the Commonwealth concerning the statistical prevalence in the general population of persons possessing the victim's blood characteristics.

On October 22, 1985, Hector Dones was involved in a fight with two males at a gas station in Chesapeake. During the fight, Dones suffered stab wounds and later died of his injuries. Witnesses were able to provide police with the license plate number of the car in which the two males arrived at and departed from the gas station. The car was registered to appellant's address. The police proceeded to the address, were admitted into the house by appellant's mother, and found appellant inside. Appellant had blood stains on his shirt, jeans and left shoe. The police discovered appellant's brother hiding in the bathroom shower, fully clothed. The officers also retrieved a telescoping metal stick which matched witnesses' descriptions of an object taken from the victim by the two males.

At trial, the Commonwealth presented as a witness, Jacqueline Emrich, who was employed as a forensic scientist by the Bureau of Forensic Science for the Commonwealth of Virginia. Emrich was assigned to the serology section where she routinely examined items of evidence for blood, body fluids, hairs, fibers and fabric separations. She testified that she had received a master of science degree in forensic chemistry, had completed an internship in serology in Pennsylvania, and had worked in a training capacity in the serology section of the Bureau of Forensic Science. She had testified as an expert witness in thirty previous cases. She was qualified as an expert by the trial court without objection.

Emrich tested samples of blood taken from appellant, Dones, appellant's brother, and the stains on appellant's clothing. She examined the blood to determine its type in the ABO system and to determine the type of enzymes present. She found the following blood types:

| | |
|---|---|
| Appellant's brother | Type O, EsD 2-1, PGM 2, PepA 1, GLO 2, EAP B, ADA 2-1, Ak 1, Tf C. |
| Appellant | Type A, EsD 2-1, PGM 2-1, PepA 1, GLO 2, EAP B, ADA 2-1, Ak 1, Tf C. |
| Dones | Type A, EsD 2-1, PGM 1, PepA 2-1, GLO 2, EAP BA, ADA 1, Ak 1, Tf C. |
| Stains on front of appellant's shirt | Type A, EsD 2-1, PGM 1, PepA 2-1, GLO 2, EAP BA, ADA 1, Ak 1, Tf C. |
| Stains on arm of appellant's shirt[1] | Type A, EsD 2-1, GLO 2, EAP BA, ADA 1, AK 1, Tf C. |
| Stains on appellant's jeans | Type A, EsD 2-1, PGM 1, PepA 2-1, GLO 2. |
| Stains on appellant's left shoe | GLO 2. |

These results show that the blood stains from appellant's clothing were not consistent with appellant's blood but were consistent with Dones' blood. The Assistant Commonwealth Attorney then asked Emrich how many people in a population of one hundred thousand have the same blood characteristics as found in the sample of Dones' blood and the stain on appellant's shirt. Appellant objected on the ground that the question called for expertise in math and statistics and that Emrich was not qualified to answer. Before ruling on the objection, the trial court allowed the prosecution to have Emrich explain how she arrived at a statistical prevalence of a certain blood type. Emrich stated that after discerning the blood and enzyme types of a particular sample of blood, she consulted published studies to determine the percentage of each type in the general population. She then multiplied the percentages of each type to arrive at the percentage of the population possessing the blood and enzyme types of her sample. She was unable to specifi-

---

[1] Emrich was unable to type the remaining enzymes in the blood stains from the arm of appellant's shirt, appellant's jeans and appellant's shoe.

cally identify by name which studies or tables she relied on for the general population percentages of each individual blood and enzyme type. The Assistant Commonwealth Attorney again asked Emrich how common is the type of blood found on appellant's clothing and taken from Dones. Appellant objected on the grounds that the question called for a hearsay response and stated, "[i]t's going back to literature and I don't know what her current literature is. . . ." The trial court overruled the objection and permitted Emrich to testify that "about nine [people] out of 100,000" possess the blood type found on appellant's shirt and shared by Dones.

On appeal, appellant contends that because Emrich relied on unidentified studies which were not in evidence, the trial court erred in permitting her to testify to the prevalence in the population of Dones' blood type; and that because she was not an expert in statistics, the court erred in allowing her to testify about statistical matters. We disagree.

■ We first note that the trial court did not abuse its discretion in allowing Emrich to testify as an expert in forensic serology. Her education, training and experience qualified her as an expert in the field. *See Kern v. Commonwealth*, 2 Va. App. 84, 86, 341 S.E.2d 397, 399 (1986). Courts generally have held that evidence of population percentages of certain combinations of blood characteristics, when based on established facts, is admissible as relevant to identification, and that such information is reasonably within the expertise of the forensic expert testifying to blood type analysis. *People v. Proveaux*, 157 Mich. App. 357, ____, 403 N.W.2d 135, 139-40 (1987); *Shaw v. State*, 179 Ga. App. 807, ____, 348 S.E.2d 132, 134 (1986); *Plunkett v. State*, 719 P.2d 834, 841 (Okla. 1986), *cert. denied*, 479 U.S. 1019 (1986); *State v. Pearson*, 234 Kan. 906, ____, 678 P.2d 605, 618 (1984); *State v. Chavez*, 100 N.M. 730, ____, 676 P.2d 257, 260 (1983); *State v. Rolls*, 389 A.2d 824, 829-30 (Me. 1978). Challenges to blood type statistics generally go only to the weight of such evidence and not to its admissibility. *E.g., Graham v. State*, 168 Ga. App. 23, ____, 308 S.E.2d 413, 414 (1983); *State v. Washington*, 229 Kan. 47, ____, 622 P.2d 986, 995 (1981). We agree that such evidence is relevant to identification and is admissible.

■ Appellant relies on *Simpson v. Commonwealth*, 227 Va. 557, 318 S.E.2d 386 (1984), which recognized the rule that

"[g]enerally, an expert witness in Virginia has not been permitted to base his opinion on facts not in evidence." *Id.* at 565, 318 S.E.2d at 391. In *Simpson*, the expert pathologist partly based his opinion as to the cause of death on the victim's hospital records which were not in evidence. The Court found that the pathologist's reliance on the hospital records for his expert opinion violated the rule. Appellant argues that by relying on blood type population percentage studies not in evidence, Emrich's opinion as to the prevalence in the population of Dones' blood type was also contrary to the rule.

In *Kern*, a panel of this Court upheld the trial court's ruling which allowed an expert jewelry appraiser to base her appraisal of a gemstone partly on an unidentified market data brochure used by experts in her field. The brochure was not in evidence. The Court distinguished the brochure from the *Simpson* hospital records, stating:

> The market data brochure relied on by [the appraiser] in the present case, however, was not prepared for the sole purpose of arriving at a specific opinion at issue in this case. The brochure was prepared as a collection of data customarily available to gemstone appraisers in general. It was analogous to a medical treatise consulted by an expert or to a real estate record consulted by a real estate appraiser.

2 Va. App. at 87-88, 341 S.E.2d at 399.

Likewise, in the case at bar, the studies or tables consulted by Emrich to arrive at the statistical prevalence of Dones' blood type are of a type customarily relied upon and consulted by those in her field. Such information and knowledge is within the expertise of the forensic serologist, and the court did not err to admit her testimony when the studies or tables are not in evidence or not identified. *See State v. Onken*, 701 S.W.2d 518, 522 (Mo. Ct. App. 1985); *accord, Kern*, 2 Va. App. at 87-88, 341 S.E.2d at 399. Just as the appraiser in *Kern* analyzed the gemstone, which was in evidence, and then consulted the market data brochure in order to render an opinion as to the stone's value, the serologist tested the blood samples, which were also in evidence, and then consulted the statistical studies to render her opinion.

Emrich's testimony was also not prohibited merely because she was not an expert in statistics, mathematics, or probability. The mathematical procedures employed by Emrich do not require the knowledge and abilities of a qualified expert. "[S]imple multiplication may be an integral part of many scientific processes and determinations." *Evans v. State*, 256 Ga. 10, 13, 342 S.E.2d 684, 687 (1986). The trial court, therefore, did not abuse its discretion in allowing Emrich to testify to the prevalence in the population of persons possessing Dones' blood type.

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Barrow, J., and Hodges, J., concurred.