#24499-a-PER CURIAM
**2008 SD 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

    v.

CURTIS ALLEN DOSCH,                                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SCOTT P. MYREN
Judge

* * * *

LAWRENCE E. LONG
Attorney General

ANDREW KNECHT
Assistant Attorney General                          Attorneys for plaintiff
Pierre, South Dakota                                and appellee.

GINA J. ROGERS                                      Attorney for defendant
Aberdeen, South Dakota                              and appellant.

* * * *

CONSIDERED ON BRIEFS
JANUARY 7, 2008

OPINION FILED 3/19/08

#24499

PER CURIAM

[¶1.]     Curtis Dosch (Dosch) appeals his convictions for one count of third degree burglary, one count of grand theft and ten counts of unauthorized possession of a controlled substance.  We affirm.

## FACTS

[¶2.]     Sometime during the night of September 23, 2005, an individual broke through a window in Jones' Drug Store in Aberdeen, South Dakota and stole various schedule two controlled prescription drugs from a locked drawer inside the business.  Prescription drugs that were taken included:  oxycodone; demerol; methadone; morphine; and adderall.

[¶3.]     Sometime during the evening of November 20, 2005, an individual entered an access panel in the roof of the Medical Center Pharmacy in Aberdeen and stole various schedule two controlled prescription drugs from that business.  Prescription drugs that were taken included:  adderall; methadone; lorazepam; morphine; and, oxycodone.

[¶4.]     The investigation of these incidents led to Dosch who was indicted for:  two counts of third degree burglary; two counts of grand theft; and, ten counts of unauthorized possession of a controlled substance.  The State also filed a part two habitual offender information alleging Dosch had a prior felony conviction for possession of a controlled substance.

[¶5.]     Dosch's three day jury trial took place in March 2007.  At the conclusion of the trial, the jury returned verdicts finding Dosch guilty of one count of burglary, one count of grand theft and ten counts of unauthorized possession of a

controlled substance.[1]  Dosch admitted the allegations of the habitual offender information and was sentenced to:  twelve years in the penitentiary for burglary; ten years, with thirty-two months suspended, for grand theft; and two years for each unauthorized possession count.  All sentences were ordered to be served consecutively.  Dosch appeals.

ISSUE

[¶6.]    **Did the trial court abuse its discretion in admitting testimony on population studies from the State's DNA expert?**

[¶7.]    During the investigation of the Jones' Drug burglary, law enforcement discovered several blood stains close to the burglar's point of entry and the drawer from which controlled substances were stolen.  A sample of each blood stain was taken and, pursuant to a warrant, a buccal swab was also obtained from Dosch. The various samples were submitted to the State Forensic Laboratory in Pierre for comparison and analysis and the criminalist who performed the study appeared as the State's DNA expert witness at trial.

[¶8.]    The criminalist testified that the DNA from the blood stains was consistent with the DNA in the swab obtained from Dosch and further testified concerning the probability of recurrence of the DNA profile in the general population.  In that regard, the criminalist read into the record the conclusion from her written report that, "[t]he male DNA profile obtained from . . . the stains from Jones Drug would not be expected to occur more than once among unrelated individuals in the world population."  Dosch's counsel objected to this testimony on

---

1.    Dosch was acquitted of the burglary and grand theft charges relating to the Medical Center Pharmacy.

#24499

grounds of lack of foundation and the objection was overruled. On cross-examination, the criminalist testified that population studies provided the statistical basis for her opinion but that she had no expertise in population studies, statistics or population genetics. On appeal, Dosch argues that the trial court erred in admitting the criminalist's testimony because she was not qualified as an expert in population studies, statistics or genetics and because her conclusion was based solely on information received from the expertise of others.

> Admission of expert testimony is governed by SDCL 19-15-2 (Rule 702):
>
>> If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> Trial courts retain broad discretion in ruling on the admissibility of expert opinion. Decisions to admit or deny opinion evidence will not be reversed absent a clear showing of abuse of discretion.

State v. Guthrie, 2001 SD 61, ¶ 30, 627 NW2d 401, 414-415 (citations omitted).

SDCL 19-15-3 (Rule 703) on the factual basis for expert opinions provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type *reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. (emphasis added).

[¶9.]     An argument over admission of expert testimony similar to that presented here was raised in *State v. Edelman*, 1999 SD 52, 593 NW2d 419. The

defendant in *Edelman* was charged with multiple counts of sexual contact with a minor and rape. During trial, a crimialist specializing in serology provided expert testimony linking the defendant to the crimes. As part of the State's case, the criminalist testified from a book concerning the rate of occurrence of a rare blood type in the Caucasian population. The criminalist also testified that she had not personally conducted any statistical studies in that area. On appeal, the defendant argued that there was no foundation to qualify the criminalist as a statistical expert on population genetics or blood type percentages. This Court concluded:

> "the trial court has broad discretion in determining the qualifications of expert witnesses and in admitting expert testimony." We find no abuse of discretion by the trial court in allowing this testimony. [The criminalist] did establish expert qualifications in serology. Her expertise in serology would include a knowledge of blood types and their general distribution throughout the population. We affirm.

*Edelman*, 1999 SD 52, ¶ 38, 593 NW2d at 425 (citations omitted).

[¶10.] A similar result was reached by the Virginia Court of Appeals in *Funderburk v. Commonwealth of Virginia*, 368 SE2d 290 (VaCtApp 1988). During the defendant's murder trial in *Funderburk*, a forensic serologist testified for the state that blood stains found on the defendant's clothing were consistent with the victim's blood. Over the defense's objections, the trial court allowed the serologist to testify concerning the statistical prevalence in the general population of persons with the victim's blood characteristics. As foundation for her testimony, the serologist stated that she had consulted published studies to determine the percentage of each blood type in the general population, but admitted that she was unable to specifically identify by name which studies or tables she had relied upon.

The defendant argued on appeal that because the serologist relied on unidentified studies not in evidence and because she was not an expert in statistics the trial court erred in allowing her to testify on statistical matters. The Virginia Court disagreed, concluding:

> [T]he studies or tables consulted by [the serologist] to arrive at the statistical prevalence of [the victim's] blood type are of a type *customarily relied upon and consulted by those in her field.* Such information and knowledge is within the expertise of the forensic serologist, and the court did not err [in admitting] her testimony when the studies or tables [were] not in evidence or not identified.

*Funderburk*, 368 SE2d at 292 (emphasis added)(citations omitted).

[¶11.] A DNA case more analogous to this matter was considered by the Indiana Court of Appeals in *Patterson v. State of Indiana*, 729 NE2d 1035 (IndCtApp 2000). The defendant in *Patterson* was charged with attempted burglary. During trial, the State presented testimony from a DNA expert affirmatively comparing DNA markers extracted from blood stains found at the crime scene with markers found in the defendant's blood sample. Relying on statistics about the general population, the expert testified to the rate of occurrence of these common DNA markers in the Caucasian and Black populations.[2] The expert derived her statistics from a published study developed by a company that had sampled a randomly selected group of individuals from around the country. As to the defendant's contention on appeal that the trial court erred in admitting the statistical analysis due to lack of an adequate foundation, the Indiana court held:

> Because the statistical analysis was based on *published, empirical scientific data,* and not mere speculation or

_____

2. The defendant in *Patterson* was of African American heritage.

> unsubstantiated estimates, the trial court did not abuse its discretion in finding the evidence reliable and admissible. *See* [Davis v. State, 476 NE2d 127, 135 (IndCtApp 1985)](no foundational error in admitting probability calculation[s] where they were based not on speculation, but upon *accepted scientific tables* reporting the frequency of each genetic marker in the Caucasian population in Indiana).

*Patterson*, 729 NE2d at 1040. (emphasis added).

[¶12.]     The criminalist in this case provided foundation testimony very much like that provided by the DNA expert in *Patterson*. The expert testified concerning her educational background, job experience, specialized training and membership in various professional organizations. She further testified regarding her qualification as an expert in serology and DNA in prior criminal cases. With regard to her work in this case, the expert testified to the techniques, protocols, procedures, safeguards and controls employed in performing her DNA analysis and to their general acceptance in the scientific community. With specific regard to her statistical analysis, the criminalist testified that her information was based upon population studies conducted by the FBI and other laboratories and DNA profiling performed on hundreds of samples from various ethnic groups within the population. The criminalist testified that the FBI had published its data in several peer review journals and made it a part of a computer program used by most forensic labs across the country in calculating frequency of occurrence of certain DNA markers.

[¶13.]     Given the detailed foundation testimony provided by the criminalist, the fact that her statistical analysis was based upon published, empirical scientific data and not on mere speculation or unsubstantiated estimates, and the fact that the studies or tables she relied upon were of a type customarily consulted by those

in her field, the trial court committed no abuse of discretion in ruling that her testimony was admissible.

[¶14.]     Affirmed.

[¶15.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.