**Roderic Eugene INGRAM,**
**Defendant–Appellant.**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 45S00–9608–CR–560.**

Supreme Court of Indiana.

Aug. 21, 1998.

Marce Gonzalez, Jr., Appellate Public Defender, Merrillville, for Defendant–Appellant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant, Roderic Ingram, was convicted of rape,[1] a class A felony, and criminal confinement,[2] a class D felony, and was adjudicated a habitual offender. He was sentenced to thirty years on the rape charge, enhanced by thirty years, and two years on the confinement charge, to run concurrent to the rape sentence.

In this direct appeal, the defendant's sole contention is that the trial court erred in admitting evidence of PCR (polymerase chain reaction) DNA analysis which identified the defendant's DNA as being consistent with the semen and pubic hair samples taken from the victim.

1.  Ind.Code § 35–42–4–1 (1993).

2.  Ind.Code § 35–42–3–3 (1993).

3.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ind. Evidence Rule 403.

4.  "Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." Ind. Evidence Rule 702(b).

5.  "Such factors may include, but are not limited to: 1) whether the technique has been or can be

We have held that DNA evidence is not automatically admissible. *Harrison v. State,* 644 N.E.2d 1243, 1251 (Ind.1995). Under Indiana Evidence Rules 403[3] and 702(b),[4] before expert scientific evidence may be admitted in Indiana, the trial court must be satisfied that: (1) the scientific principles upon which the expert testimony rests are reliable; (2) the witness is qualified; and (3) the testimony's probative value is not substantially outweighed by the dangers of unfair prejudice. *Id.* at 1252.

The defendant in the present case contends that the trial court erred in its determination that the scientific principles upon which the PCR/DNA type of analysis rests were reliable. "The decision of the trial court as to reliability under Indiana Evidence Rule 702(b) will be reviewed for abuse of discretion." *McGrew v. State,* 682 N.E.2d 1289, 1292 (Ind.1997). As we have recently noted, "In determining reliability, while various factors have been identified,[5] there is no specific 'test' or set of 'prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." *Id.*

Carl Sobieralski, a forensic DNA analyst with the Indiana State Police,[6] testified that two types of DNA testing, PCR (polymerase chain reaction) and RFLP (restriction fragment length polymorphism), are used. He explained that the Indiana State Police Laboratory has chosen PCR testing because it can utilize smaller amounts of DNA than RFLP. This is because, in PCR, the DNA is amplified—"kind of like cloning." Record at 361. Also, because PCR works with smaller pieces

empirically tested; 2) whether the technique has been subjected to peer review and publication; 3) the known or potential rate of error, as well as the existence and maintenance of standards controlling the technique's operation; and 4) general acceptance within the relevant scientific community." *McGrew,* 682 N.E.2d at 1292.

6.  At trial, after the State sought to have Sobieralski declared an expert, the defendant agreed, stating, "My position is that [the State] seemed to have established this individual as being what Indiana would require, would recognize as someone who has the expertise to do DNA comparisons." Record at 366.

of the DNA, the DNA "does not have to be in as good a condition" as is required for accurate results with RFLP. Record at 361.

The State then sought to admit the results of Sobieralski's PCR/DNA testing. The trial court ruled that, while "RFLP has already been found [reliable] by the Indiana Supreme Court," the court needed "further foundation on PCR. It may be the same foundation as for [RFLP] testing, but I want to make sure that [PCR] testing is now approved in the scientific community as a valid way of testing for DNA." Record at 371.

The State then asked Sobieralski to "talk for a minute about the history of the PCR type test for DNA." Record at 374. Sobieralski replied:

> PCR analysis began in 1986. The first case that involved DNA analysis in the United States was a PCR case that preceded RFLP by approximately one year. The PCR analysis methods have been developing over the last several years. The validation studies, which were studies that look at environmental impacts. What would happen if a blood stain was on wood, metal, was on carpet, with the chemicals that are on carpet. What happens if it's exposed to dirt or bleach or other household cleaners, we look at those kinds of things. We look at, what could happen if you heat it up too much. We look at what happens if it's been exposed to different UV light, which is the harmful rays of the sun. We perform a lot of validation studies like that, we make sure that it works for blood, seminal material. It works for saliva, cells, we've checked bones. The formalities analysis and we repeated them several times. . . .

Record at 374–75. The narrative was interrupted by the defendant's objection. When the State continued, it asked Sobieralski whether "the criminal justice field [was] the only field that PCR DNA testing is used in?" Record at 376. Sobieralski responded, "It's used in quite a range of fields. It's used in diagnostics for hospitals, research work involving proteins that involves every aspect of biology right now is looking toward PCR actually." Record at 377. The State asked whether "the PCR method of DNA testing [is] seen as reliable in the scientific community," to which Sobieralski responded, "Yes, it is." Record at 377.

At trial, the defendant argued that no basis was shown as to why "what was developed as a diagnostic test, specifically it was used in Amniocentesis to determine whether there was perhaps a genetic problem with an unborn child, . . . [is now used] forensically." Record at 377–78. The court ruled that this specific information was "not necessary for a foundation," but told the defendant that he could cross-examine the witness if he wanted. The defendant did not cross-examine the witness and conceded that the type of foundation he was requesting was not required for foundation for RFLP/DNA testing. The trial court ruled that, on the basis of Sobieralski's testimony, "PCR analysis for DNA purposes is accepted in the scientific community," and, therefore, the foundation was laid. Record at 382.[7]

We find that the trial court did not abuse its discretion in finding that a proper foundation had been established as to the scientific principles of PCR analysis of DNA.[8] We affirm the trial court in all respects.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.

---

**7.** The trial court accurately noted that the defendant's initial objections at trial did not go to the threshold admissibility question of reliability for foundation—whether the basic scientific principles of PCR/DNA testing were reliable—but rather focused on the particulars of the testing in this case, which go to the *weight* given to this expert's testimony. At trial, the defendant argued that the State had not given evidence that the DNA testing *in this case* was "accurately done, with no contamination." Record at 367. After Sobieralski began laying the foundation for PCR testing

in general, the defendant again objected, arguing that he wanted Sobieralski to talk about what he, personally, had done in this case, rather than about PCR generally. Record at 376. As the trial court noted, this goes to the weight of the expert's testimony, not to the threshold reliability/foundation issue.

**8.** Further, we note that the State's case did not depend upon the DNA evidence to identify the defendant. It merely bolstered the victim's independent identification testimony in this case,

which was made prior to the admission of any DNA evidence. The victim had known the defendant for over a year because he was a friend of her sister's and often came to the apartment they shared. She let him into their apartment on the night in question only because he came to the apartment at 1:30 a.m. and told her that her sister was in trouble and that he needed to talk to her about it.