Samuel PATTERSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A03–9907–CR–252.

Court of Appeals of Indiana.

June 14, 2000.

Donald W. Pagos, Michigan City, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

After a jury trial, Samuel Patterson was convicted of attempted burglary,[1] a Class B felony, and was adjudged to be a habitual offender. He appeals his conviction, raising the following issues for review:

I. Whether the State purposefully excluded a juror because of her race, thereby denying Patterson a fair trial.

II. Whether there was a sufficient foundation for the introduction of genetic typing evidence and statistical analysis.

III. Whether the trial court erred in refusing to instruct the jury on the defense of abandonment.

IV. Whether the trial court erred in refusing to answer a jury question.

V. Whether there was sufficient evidence to support his conviction.

We reverse Patterson's attempted burglary conviction and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Around 4:00 a.m. on December 6, 1997, eighty-two year old Julia Maciejewski was awakened by the sound of breaking glass. She went to investigate, and found a broken window in her sunroom, glass on the floor, and blood on the curtains. She called the police.

When the police responded to the call, they discovered Patterson at the back of Maciejewski's house. After a chase on foot, police apprehended the bleeding Patterson, who commented that he knew he should not have broken the window. Maciejewski identified Patterson as the man who had come to her door several days earlier looking for work shoveling snow.

Patterson was charged and convicted of attempted burglary with the intent to commit theft. He was adjudged to be a habitual offender and was sentenced to fifty years imprisonment. He now appeals.

## DISCUSSION AND DECISION

### I. Peremptory challenge

Patterson, an African American, first argues that he was denied a fair trial because the State purposefully excluded the only potential African American juror because of her race through the exercise of its peremptory challenges. The juror, Mrs. Gerron, stated that she knew the defendant, and did not want to serve, but that she would try to be fair. When the court asked her if there was anything she wanted to say, she stated that she was uncomfortable and felt like Patterson would not receive a fair trial with only one African American on the jury. She also felt uncomfortable about being the only African American on a jury with eleven Caucasians. The State challenged her for cause, but the trial court denied it. The State then used a peremptory strike to remove her from the panel.

 The exercise of racially discriminatory peremptory challenges is constitutionally impermissible. *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997) (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.

---

1. *See* IC 35–43–2–1; 35–41–5–1.

1712, 90 L.Ed.2d 69 (1986)). To establish a prima facie case of racial discrimination in the use of peremptory challenges, a defendant must show the trial court: 1) that the prosecutor used peremptory challenges to remove members of a cognizable racial group from the jury pool; and 2) that the facts and circumstances raise an inference that the prosecutor used those strikes to exclude potential jury members from the jury because of their race. *Williams v. State,* 700 N.E.2d 784, 786 (Ind.1998).

■ Once the prima facie case is made, the burden shifts to the State to provide a race-neutral explanation for challenging the juror. *McCants v. State,* 686 N.E.2d 1281, 1284 (Ind.1997). If the prosecution's explanation on its face is based on something other than race, the explanation will be deemed race neutral. *Id.* Although the prosecutor's reason must relate to the particular case to be tried, it need not rise to the level justifying a challenge for cause, nor need it be particularly persuasive, so long as it constitutes a valid reason for excluding the juror in question. *Brown v. State,* 684 N.E.2d 529, 537 (Ind. Ct.App.1997), *trans. denied, cert. denied, Brown v. Indiana,* 523 U.S. 1027, 118 S.Ct. 1316, 140 L.Ed.2d 479 (1998).

■ The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Lee v. State,* 689 N.E.2d 435, 440 (Ind.1997). The trial court must then decide whether the defendant, as the opponent of the strike, has proved purposeful racial discrimination. *Williams,* 700 N.E.2d at 786. The trial court's finding on this issue is entitled to great deference and will be set aside on appeal only when found to be clearly erroneous. *McCants,* 686 N.E.2d at 1284.

■ Here, only one of the eighteen potential jurors was African American. The State used one of its two peremptory challenges to strike her from the panel. Our supreme court has held that these facts and circumstances do raise an inference that the juror was excluded on the basis of

race. *See id.* (facts and circumstances do support inference of exclusion based on race where prosecutor used peremptory challenge to strike only African American from jury in panel of eighteen).

■ Thus, the burden then shifted to the prosecutor to offer a race neutral reason for striking the juror. Mrs. Gerron stated that she knew the defendant and did not want to serve on the jury. The State also noted that Mrs. Gerron had a prior relationship with the prosecutor's office. The trial court's decision that this satisfied the prosecutor's burden to offer a race neutral reason for striking the juror was not clearly erroneous. *See Barnett v. State,* 637 N.E.2d 826, 830–31 (Ind.Ct.App. 1994) (juror's acknowledgement that she did not want to serve and felt uncomfortable in making judgments of other people was valid race-neutral reason for exercising peremptory challenge); *Isom v. State,* 585 N.E.2d 1347, 1350–51 (Ind.Ct.App. 1992), *trans. denied* (juror's acquaintance with defendant was sufficient race neutral reason to sustain peremptory challenge).

## II. DNA evidence and statistical analysis

■ Patterson next contends that the trial court erred in admitting genetic typing (DNA) evidence and statistical analysis because the State failed to demonstrate an adequate foundation for the evidence. As our supreme court explained in *Ingram v. State,* 699 N.E.2d 261, 262 (Ind. 1998):

"DNA evidence is not automatically admissible. Under Indiana Evidence Rules 403 and 702(b), before expert scientific evidence may be admitted in Indiana, the trial court must be satisfied that: (1) the scientific principles upon which the expert testimony rests are reliable; (2) the witness is qualified; and (3) the testimony's probative value is not substantially outweighed by the dangers of unfair prejudice."

*Id.* at 262 (footnotes and citations omitted). The decision of the trial court as to relia-

bility is reviewed for an abuse of discretion. *Id.*

At trial, the State presented the testimony of Lisa Black, DNA supervisor for the North Zone of the Indiana State Police Laboratory. She testified in detail about her qualifications, her work, her laboratory methods, and DNA analysis in general. She testified that she received a bachelor's degree in biochemistry from Purdue University and joined the State Police in 1985. She worked for ten years in forensic serology before joining the DNA Unit in 1995 and completing a State Police course in DNA analysis. In addition, she has taken three or four classes through the Federal Bureau of Investigation on polymerase chain reaction (PCR) DNA analysis. She is a member of professional organizations and has testified in court approximately eighty times as a forensic examiner, including seven times regarding PCR DNA analysis.

She explained that DNA analysts examine evidence from crime scenes for the presence of blood or other body fluids. They then analyze the samples for DNA, develop a profile based on the DNA, and compare the profile to known standard samples. She then testified about the quality control mechanism in place at her laboratory, DNA, PCR DNA analysis, and DNA profiles. She testified that PCR analysis was first presented in court in 1986 and has been used extensively since that time. She stated that the method used by her laboratory has been validated by a number of other laboratories, including the one operated by the FBI. She explained that in PCR analysis, the examiner looks to certain areas of the DNA for markers. This method is nationally recognized and standardized so the results can be used to track criminals in a national database. She testified that PCR is an accepted method in the scientific community and that she has testified in seven other cases as to her results using this method. This testimony was sufficient to establish that the scientific principles underlying PCR analysis are sound and that Black

was qualified to testify. The trial court did not err in admitting the evidence.

Patterson also challenges Black's statistical testimony derived from the DNA analysis. Where probability testimony is based on empirical scientific data, rather than unsubstantiated estimates, the presentation and admission of probability testimony need not constitute error. *Davis v. State,* 476 N.E.2d 127, 135 (Ind.Ct.App.1985), *trans. denied* (1987). Based on Black's comparison of the blood on the curtains and Patterson's blood standard sample, she concluded that the markers were consistent. Relying on statistics about the population in general, Black testified that the markers at issue here occur in approximately 0.00000082%, or one in 120 million of the Caucasian population and 0.000025%, or one in four million of the Black population. She derived these statistics from a study developed by a company that sampled a randomly selected group of individuals from around the country. Around two hundred Caucasians and two hundred Black individuals were DNA typed. A statistical projection was then performed to estimate the frequency of each genetic trait in each population. The study was published in a scientific journal. Because the statistical analysis was based on published, empirical scientific data, and not mere speculation or unsubstantiated estimates, the trial court did not abuse its discretion in finding the evidence reliable and admissible. *See id.* (no foundational error in admitting probability calculation where they were based not on speculation, but upon accepted scientific tables reporting the frequency of each genetic marker in the Caucasian population in Indiana).

Even if the trial court had erred in admitting the DNA evidence and statistical analysis, we fail to see how Patterson was harmed. The evidence only served to connect Patterson to the breaking of the window, to which he admitted. Thus, the admission of the evidence was harmless. *See* Ind. Trial Rule 61 (courts must disre-

gard any errors which do not affect the substantial rights of the parties).

## III. Abandonment instruction

Patterson argues that the trial court erred in refusing to give his instruction on the defense of abandonment. The manner of instructing the jury lies within the sound discretion of the trial court. *Gant v. State,* 694 N.E.2d 1125, 1128 (Ind. 1998). Error in the instruction of the jury will not warrant reversal unless it is of such a nature that the jury is misled regarding the law on the case. *Utley v. State,* 699 N.E.2d 723, 727 (Ind.Ct.App. 1998), *trans. denied.* When reviewing a trial court's refusal of jury instructions, this court applies a three part test: 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Griesinger v. State,* 699 N.E.2d 279, 281 (Ind.Ct. App.1998), *trans. denied* (quoting *Fields v. State,* 679 N.E.2d 1315, 1322 (Ind.1997)).

Where attempt is at issue, an accused will be relieved of criminal responsibility if, subsequent to taking a substantial step towards committing a crime but prior to its consummation, he voluntarily abandoned his efforts. *Smith v. State,* 636 N.E.2d 124, 127 (Ind.1994) (citing *Sheckles v. State,* 501 N.E.2d 1053 (Ind.1986)). The defense of abandonment is available only when a defendant voluntarily abandons his effort to commit the crime and voluntarily prevents its commission. *Estep v. State,* 716 N.E.2d 986, 987 (Ind.Ct.App.1999); IC 35–41–3–10. To be considered voluntary, the decision to abandon must originate with the defendant, not as a result of extrinsic factors that increase the probability of detection. *Estep,* 716 N.E.2d at 987 (citing *Smith,* 636 N.E.2d at 127).

The trial court did not err in refusing to give Patterson's tendered instruction on abandonment because the evidence in the record did not support such an instruction. The evidence showed

eighty-two year old Maciejewski was awakened by the sound of breaking glass. She found a flashlight and went to investigate, turning on lights as she went through the house. She found a window in her sunroom had been broken. When police responded to her call, they found Patterson still lurking behind her house. The reasonable inference from this evidence is that Patterson abandoned his attempt to enter Maciejewski's house because he was about to be discovered by her. Because his abandonment of his criminal endeavor was made in response to an extrinsic factor, namely, the probability of detection, and was not a product purely of his own volition, it does not constitute a legal defense and Patterson was not entitled to an instruction on this theory. The trial court did not err in refusing to give this instruction. *See Peak v. State,* 520 N.E.2d 465, 467–68 (Ind.Ct.App.1988) (defendant failed to establish abandonment defense where evidence showed he abandoned attempt to break into house because he was unable to break down the door and because he saw a police officer).

## IV. Jury question

Patterson alleges that the trial court erred in refusing to answer a jury question. During deliberations, the jury gave the court a note that asked "If someone breaks & enters into a dwelling of another person with intent to commit a felony other than theft, is that still considered a burglary?" *Record* at 6. After consulting with both attorneys, the court responded that it could not answer the jury's question. Patterson argues that the trial court had the responsibility to clarify points of law when requested to do so by the jury, and that refusing to do so allowed the jury to convict Patterson when they had reasonable doubt about his intent to commit theft.

IC 34–1–21–6 provides:
"After the jury ha[s] retired for deliberation, if there is a disagreement between them as to any part of the testimony, or

if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys."

In *Bouye v. State*, 699 N.E.2d 620 (Ind. 1998), our supreme court held that this statutory mandate applies only in those cases in which the jury explicitly indicates a disagreement. *Id.* at 627–28. When no disagreement is indicated, the trial court may exercise discretion in determining whether certain questions of the jury should be answered. *Wray v. State*, 720 N.E.2d 1185, 1190 (Ind.Ct.App.1999), *trans. denied* (2000). In this case, the jury did not express any disagreement, only some question about the significance of the underlying felony of theft. Thus, the trial court was not required to respond to the jury's request and did not err in refusing to do so.

### V. Sufficiency of evidence

 Patterson contends that the evidence is insufficient to support his conviction for attempted burglary. Specifically, he argues that there was insufficient evidence of his intent to commit theft when breaking and entering the home. When addressing a sufficiency of the evidence claim, a reviewing court neither weighs the evidence nor judges the credibility of the witnesses. *Heavrin v. State*, 675 N.E.2d 1075, 1079 (Ind.1996). We consider all evidence favorable to the jury's verdict along with any reasonable inferences that can be drawn therefrom. *Id.* A reviewing court will not reverse a verdict if there is substantial evidence of probative value to support the conclusions of the jury. *Faust v. State*, 642 N.E.2d 1371, 1374 (Ind.1994).

To convict Patterson of attempted burglary as a Class B felony as charged, the State had to prove that he took a substantial step toward breaking and entering the dwelling of another with the intent to commit a felony in it. IC 35–43–2–1(1)(B)(i). The charged felony was theft.

In a series of cases including *Gilliam v. State*, 508 N.E.2d 1270 (Ind.1987), *Justice v. State*, 530 N.E.2d 295 (Ind.1988), *Gebhart v. State*, 531 N.E.2d 211 (Ind.1988), and *Robinson v. State*, 541 N.E.2d 531 (Ind.1989), our supreme court held that proof of an illegal entry is insufficient to support a conviction for attempted burglary with theft as the underlying felony. It explained, "The course of conduct must constitute a substantial step toward commission of the substantive offense and be strongly corroborative of the actor's criminal culpability to cause the proscribed result of the substantive offense." *Gilliam*, 508 N.E.2d at 1270. The corroborative evidence need not be overwhelming, but must provide the basis of a reasonable inference that the defendant intended to commit the underlying felony. *Id.* at 1271.

The court explained that some fact in evidence must point to an intent to commit a specific felony. *Justice*, 530 N.E.2d at 297. It further noted that although evidence of breaking and entering and evidence of flight alone may not support an inference that a defendant intended to commit theft, these circumstances, when combined with touching, disturbing, or even approaching any valuable property once inside the premises is sufficient. *Id.* Subsequently, courts have stated that the requisite intent to commit a felony typically can be inferred from the subsequent conduct of the individual inside the premises or by the manner in which the crime was committed. *Smith v. State*, 671 N.E.2d 910, 912–13 (Ind.Ct.App.1996). Moreover, possession of stolen property will support an inference of intent to commit theft at the time of a breaking and entering. *McBride v. State*, 597 N.E.2d 992, 994 (Ind.Ct.App.1992).

 These rules, however, are awkward in cases such as this one, in which the defendant's criminal endeavor is thwarted before he can evidence his intent. Here, Patterson took no action indicative of his intent in breaking the window of eighty-two-year-old Maciejewski's house.

There is no evidence that he touched, disturbed, or even approached any valuable property. Because he was unable to climb through the broken window before he was detected, there is no evidence of his subsequent conduct from which to infer his intent other than his flight, which is insufficient.

Here, there is no evidence that Patterson intended theft. The only evidence here is that Patterson broke Maciejewski's window, causing an injury to his arm. He fled, and was discovered lurking behind her house. There is no evidence corroborative of his intent other than the evidence of his illegal breaking and entering of the house and his flight. Therefore, we must reverse his conviction for attempted burglary. This result is compelled by our supreme court's decision in the *Gilliam* line of cases. Prior to those decisions, this evidence would have been sufficient to sustain a conviction for attempted burglary. It no longer is.

However, this court may order a modification of the judgment of conviction to that of a lesser included offense because of insufficiency of evidence on a particular element of the crime. *Lane v. State,* 175 Ind.App. 543, 547, 372 N.E.2d 1223, 1227 (1978); Ind. Appellate Rule 15(N). *See also Nunn v. State,* 601 N.E.2d 334, 339 (Ind.1992) (reducing conviction from murder to involuntary manslaughter based on insufficiency of evidence of intent); *Gilliam,* 508 N.E.2d at 1271 (reducing conviction from attempted burglary to criminal trespass based on insufficiency of evidence of intent); *Dickens v. State,* 260 Ind. 284, 292–93, 295 N.E.2d 613, 618–19 (1973) (reducing conviction from murder to voluntary manslaughter based on insufficiency of evidence disproving sudden heat); *Ritchie v. State,* 243 Ind. 614, 189 N.E.2d 575 (1963) (reducing conviction from rape to assault and battery with intent based on insufficiency of evidence of penetration).

A person who knowingly or intentionally breaks and enters the dwelling of another person commits residential entry, a Class D felony. IC 35–43–2–1.5.

Residential entry is a lesser included offense of burglary which allows a felony prosecution for a housebreak without the need for proof of the intent to commit a target crime. *McKinney v. State,* 653 N.E.2d 115, 117 (Ind.Ct.App.1995); *Vincent v. State,* 639 N.E.2d 315, 317 (Ind.Ct. App.1994). The only difference between residential entry and residential burglary is the element of intent to commit a felony therein. *Vincent,* 639 N.E.2d at 317.

The evidence at trial showed that when Patterson was apprehended behind Maciejewski's house, he exclaimed that he knew he should not have broken the window. Further, DNA evidence established that Patterson's blood was on the window curtain inside Maciejewski's home. This evidence is sufficient to establish that Patterson committed the crime of residential entry.

Patterson's conviction for attempted burglary is reversed. We remand with instructions to enter conviction for residential entry and to impose sentence accordingly.

BAKER, J., and RILEY, J., concur.