**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JULIE P. VERHEYE**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ZACHARY DAYE RIFFLE, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 71A04-1201-CR-7 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable R.W. Chamblee, Jr., Judge
Cause No. 71D02-1103-FC-36

**July 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Zachary Daye Riffle appeals his conviction for attempted burglary as a class C felony.[1]  Riffle raises one issue, which is whether the evidence is sufficient to sustain his conviction.  We affirm.

The relevant facts follow.  On February 27, 2011, Riffle, who was eighteen years old, went to the apartment of Aaron Bickel, who was nineteen years old, to play video games with Bickel, Matt Hesch, and some other friends.  While at the apartment, Bickel "brought up the idea that [he] could successfully break into the Sofi Mini Mart" to "get cigarettes and money," to Riffle and the others at the apartment.  Transcript at 122.  At some point, Bickel decided to follow through with the idea, and Riffle went along with Bickel.

At approximately 11:00 p.m., Bickel, who wore a long sleeve shirt and blue jeans, drove his car to the Mini Mart on East Mishawaka Avenue.  Riffle, who was wearing red sweatpants and a gray hoody, rode with him, and Hesch drove separately.  Bickel drove around the block and parked at the end of an alley on Grove Street, which was north of and ran parallel to East Mishawaka Avenue.  Approximately five or ten minutes after Bickel and Riffle parked, Hesch arrived.  Riffle exited Bickel's vehicle and entered Hesch's vehicle, and Hesch and Riffle returned to Bickel's apartment.

Arthur Pletcher and his girlfriend Beverly Dewulf, who lived together on East Mishawaka Avenue across the street from the Mini Mart, had noticed Bickel's vehicle circle the block, drive past the Mini Mart, and park on Grove Street at the end of the alley which was about ten feet from their house.  Pletcher and Dewulf observed Bickel,

---

[1] Ind. Code § 35-43-2-1 (2004); Ind. Code § 35-41-5-1 (2004).

2

wearing a bandana across his face, exit his vehicle and walk down the alley next to their house and towards the Mini Mart. Dewulf called the police, and Pletcher exited his house, crossed Mishawaka Avenue, and approached Bickel. When Bickel saw Pletcher, Bickel initially ran towards the back of the Mini Mart property but there was a fence. Bickel then came up to Pletcher and told him to "get away," and Pletcher noticed a small crowbar in Bickel's hand and backed up a little bit. Id. at 14. Bickel then ran back to his vehicle and returned to his apartment. Dewulf described what she had observed to a police officer when the officer arrived at the Mini Mart.

At around 12:50 a.m., Bickel and Riffle returned in Bickel's vehicle to the area of the Mini Mart, and Pletcher observed Bickel's vehicle park approximately one block from the Mini Mart. Pletcher observed Riffle exit the passenger seat of the vehicle, run to the Mini Mart and around the store, and then approach the door. Pletcher noticed that Riffle was carrying what appeared to be a white plastic grocery bag. Pletcher then observed Riffle make a movement with the hand that was not holding the plastic bag to break the glass window in the door of the Mini Mart, which triggered the store's alarm, and observed Riffle then run back to Bickel's vehicle and the vehicle drive away. Dewulf called the police who were dispatched to the Mini Mart at 12:58 a.m.

Mishawaka Police Officer Daniel Holt and other police officers arrived at the Mini Mart and discovered that the lower left corner of the window in the main customer entry door to the Mini Mart had been shattered and that the security alarm was ringing. The officers noticed that it appeared entry had not been gained. Bickel's vehicle was pulled over less than a mile away from the Mini Mart, and Bickel and Riffle were apprehended.

3

Pletcher and Dewulf were transported to the location where Bickel and Riffle had been apprehended and identified Bickel as the person who had approached the Mini Mart at approximately 11:00 p.m. and Riffle as the person who had approached the Mini Mart and broke the glass of the store's window at approximately 1:00 a.m. Detective Michael Cleveland investigated the case and interviewed Riffle.

On March 1, 2011, the State charged Riffle with attempted burglary as a class C felony. At Riffle's trial, a jury heard testimony from, among others, Pletcher, Dewulf, Officer Holt, Detective Cleveland, Bickel, and Riffle. Pletcher and Dewulf provided testimony consistent with the facts above, including that Riffle, wearing red sweatpants, was the person who exited the vehicle and broke the glass of the door of the Mini Mart. Dewulf testified that she believed that the hole created by the break in the glass was large enough to unlock the door with a hand. Officer Holt testified that, based upon his conversation with an employee of the Mini Mart, the Mini Mart suffered no loss of items from inside the store. Bickel testified that he was the person who broke the glass in the front door of the Mini Mart. Bickel further testified that he drove his car and was not in the passenger seat, that he was wearing blue jeans, and that Riffle was wearing red sweatpants. When asked if it was Riffle's "idea to come along with you when he knew what you were going to [] do," Bickel answered "Yes." Id. at 137. Riffle testified that he and Bickel went to the Mini Mart at around 1:00 a.m., that Bickel drove, and that "Bickel was planning on taking something." Id. at 157. Riffle testified that Bickel was the person who broke the window of the Mini Mart and that he had stayed in the passenger seat of Bickel's vehicle. When asked whether he knew Bickel was going to break into

4

the Mini Mart and that "he knew he was going in there to grab some stuff," Riffle answered "Yes." Id. at 163. The jury found Riffle guilty of attempted burglary as a class C felony. The court sentenced Riffle to four years, all of which was ordered suspended, and the court ordered Riffle to probation for a period of two years.

The issue is whether the evidence is sufficient to sustain Riffle's conviction. When reviewing a claim of insufficient evidence, an appellate court "considers only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. If a reasonable finder of fact could determine from the evidence that the defendant was guilty beyond a reasonable doubt, then we will uphold the verdict." Baker v. State (filed June 12, 2012), Ind. No. 89S01-1109-CR-543, slip op. at 1 (citing Freshwater v. State, 853 N.E.2d 941, 942 (Ind. 2006) (citing Justice v. State, 530 N.E.2d 295, 296 (Ind. 1988)) (citations omitted) (internal quotation marks omitted)). We do not reweigh the evidence or judge the credibility of witnesses. Id. (citing McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005); Walker v. State, 442 N.E.2d 696, 698 (Ind. 1982)). These evaluations are for the trier of fact, not appellate courts. Id. In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented. Id. (citing Kidd v. State, 530 N.E.2d 287, 287 (Ind. 1988), reh'g denied).

The offense of burglary as a class C felony is governed by Ind. Code § 35-43-2-1, which provides in part that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony." An attempt is defined by Ind. Code § 35-41-5-1, which states in part that "[a] person

5

attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted." A "substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. Hughes v. State, 600 N.E.2d 130, 131 (Ind. Ct. App. 1992). Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the trier of fact based on the particular circumstances of the case. Id. "[W]hen determining whether the defendant has taken a substantial step toward a crime, the focus is on what has been completed, not on what remains to be done." Id. at 132. The State alleged that Riffle "did attempt to commit the crime of Burglary by breaking the glass door to the building or structure of Sofi Mini Mart . . . , which conduct constituted a substantial step toward the commission of the crime of Burglary, that is intentionally breaking and entering the building or structure of another person and knowingly exerting unauthorized control over the property of another person, with intent to deprive the other person of any part of the value or use thereof." Appellant's Appendix at 3. Thus, to convict Riffle of attempted burglary as a class C felony, the State needed to prove that he took a substantial step toward breaking and entering the Mini Mart with the intent to commit the felony of theft.

Riffle argues that "Bickel was the only person who voiced the intent to steal from the store," that "[a]t the time [he] walked up to the store, the issue is whether he

6

possessed the intention to commit theft, when he broke the door window, and not whether Bickel possessed that intent," that "[u]nlike Bickel, Riffle was not armed with an instrument with which to break a window" and was not "wearing a bandana across his face," and "[t]heir absence points to the lack of evidence of his intention to commit theft." Appellant's Brief at 8-9. In support of his argument, Riffle points to Patterson v. State, 729 N.E.2d 1035 (Ind. Ct. App. 2000), and Freshwater v. State, 853 N.E.2d 941 (Ind. 2006).

The State argues that it "proved [Riffle] possessed the intent to commit theft when he broke the window through his actions before the attempted break-in, the manner by which the crime was committed, and his post-arrest comments." Appellee's Brief at 6. Specifically, the State argues that Riffle's "intent to steal can be inferred from the eye-witness testimony that around one in the morning [Riffle] possessed a bag when he broke the window and that the window was broken in such a manner that a person could unlock the door" and that "[u]nlike the defendant in Freshwater[], the time and manner in which [Riffle] attempted to break-in supports the reasonable inference that [he] wanted to break-in for the purpose of stealing property from the Mini mart." Id. The State contends that Riffle understood that he and Bickel were going to the Mini Mart for the purpose of stealing property and that "[b]efore [Riffle] and Bickel drove to the Mini Mart's location, Bickel stated that he wanted to rob the Mini Mart for money and cigarettes" and that "[i]t was [Riffle's] idea to accompany Bickel when Bickel decided to follow through with his plan." Id. at 7.

7

In Patterson, this court found that, although the defendant had broken a window to a house and then fled, there "was no evidence corroborative of his intent other than the evidence of his illegal breaking and entering of the house and his flight," and the court reversed the defendant's conviction for attempted burglary. 729 N.E.2d at 1043. In Freshwater, the defendant broke into a car wash and ran out of the building when the car wash alarm sounded. 853 N.E.2d at 942. The owner of the car wash testified that nothing in the car wash was missing and he did not think the office had been disturbed at all. Id. Our Supreme Court held that "the State must prove a specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony," that no such fact was proven, that "[t]he time at and method by which [the defendant] entered the car wash suggest nothing more than that he broke in," that "[h]e could have done so for any number of reasons that do not include theft," and that "[t]he State has failed to provide evidence that his reason was to commit theft." Id. at 944.

In Baker v. State, our Supreme Court held:

> "Burglars rarely announce their intentions at the moment of entry," Gilliam[ v. State], 508 N.E.2d [1270,] 1271 [(Ind. 1987)], and indeed many times there is no one around to hear them even if they were to do so. Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering "may be inferred from the circumstances." Id.; see also Hampton v. State, 961 N.E.2d 480, 487 (Ind. 2012) ("[T]he *mens rea* element for a criminal offense is almost inevitably, absent a defendant's confession or admission, a matter of circumstantial proof."); Kondrup v. State, 250 Ind. 320, 323-24, 235 N.E.2d 703, 705 (1968) ("[T]he intent to commit a felony may be inferred from the circumstances which legitimately permit it."). "Circumstantial evidence alone is sufficient to sustain a burglary conviction." Kidd, 530 N.E.2d at 287; accord Cash v. State, 557 N.E.2d 1023, 1025 (Ind. 1990) ("A conviction for burglary may be sustained by circumstantial evidence alone.")[, reh'g denied].

8

Evidence of intent "need not be insurmountable," <u>Gilliam</u>, 508 N.E.2d at 1271, but there must be a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony," <u>Freshwater</u>, 853 N.E.2d at 944. The evidentiary inference pointing to the defendant's intent must be separate from the inference of the defendant's breaking and entering. <u>Justice</u>, 530 N.E.2d at 297; <u>Kondrup</u>, 250 Ind. at 323, 235 N.E.2d at 705. The inference of intent must not derive from or be supported by the inference of breaking and entering. In other words, the evidence must support each inference— felonious intent and breaking and entering—independently, and neither inference should rely on the other for support. This is not to say, however, that the same piece of evidence cannot support both inferences.

Requiring independent evidence of intent is necessary to maintain the distinction between burglary and other criminal offenses involving property invasion such as criminal trespass, Ind. Code § 35-43-2-2, or residential entry, Ind. Code § 35-43-2-1.5. Permitting the felonious intent element to be inferred from the inference of breaking and entering would render the intent element meaningless and read it out of the statute. <u>See</u> <u>Faulkner v. State</u>, 260 Ind. 82, 87, 292 N.E.2d 594, 596 (1973) ("If the Legislature had intended to punish a breaking and entry by itself, as we have here, they would not have added the second element of specific intent. A reading of the statute clearly indicates that both elements are included.").

<u>Baker</u>, slip op. at 2-3 (footnote omitted). The Court in <u>Baker</u> noted that "there was evidence that the defendant had been in the church kitchen and opened several cupboards and drawers while there" and held that "[t]his evidence, standing alone, permits a reasonable inference of the defendant's felonious intent at the time of entry." <u>Id.</u> at 3. The Court further stated that neither of the cases of <u>Freshwater</u> and <u>Justice</u> "should be understood to suggest that sufficient evidence of intent necessarily requires evidence that the defendant was near or approaching valuable property." <u>Id.</u>

Here, the facts most favorable to the conviction reveal that Bickel expressed his idea to break into the Sofi Mini Mart to get cigarettes and money to Riffle. Bickel decided to follow through with the idea, and Riffle went with him to the Mini Mart.

9

Riffle rode with Bickel to the Mini Mart two times, the first time at approximately 11:00 p.m., after which Riffle exited Bickel's vehicle and left the area in Hesch's vehicle, and the second time at approximately 12:50 a.m. According to Pletcher Bickel's vehicle kept circling the block before parking at the end of the alley next to his house. When asked if it was Riffle's "idea to come along with you when he knew what you were going to [] do," Bickel answered "Yes." Id. at 137. Further, during Riffle's testimony, he was asked "when you went over, had the two of you talked about committing a burglary at the Sofi Mini Mart," and Riffle testified "Bickel was planning on taking something, yes." Id. at 157. During the prosecutor's cross-examination of Riffle, when asked "Officer Cleveland asked you what you did after getting home for awhile after having gone out for pizza and come back, did you not say that we decided to do something stupid," Riffle stated "Yes, I did say that." Id. at 163. The prosecutor then asked "And you meant by that, going and breaking into the Sofi Mini Mart," and Riffle answered "Yes." Id. The prosecutor asked "And you knew he was going there to get money and cigarettes, isn't that correct," to which Riffle responded "I did not know what he was going to get, no." Id. The prosecutor then asked "But you knew he was going in there to grab some stuff," and Riffle answered "Yes." Id. The evidence further reveals that Bickel and Riffle returned to the area of the Mini Mart at approximately 12:50 a.m., that Bickel parked his vehicle about one block from the Mini Mart, and that Riffle exited the passenger seat of the vehicle, ran to the Mini Mart and around the store, and then approached the door. Riffle broke the glass window in the door of the Mini Mart, which triggered the store's alarm, and then ran back to Bickel's vehicle.

10

Based upon our review of the evidence as set forth in the record, we conclude that evidence of probative value exists from which the trier of fact could find Riffle guilty beyond a reasonable doubt of attempted burglary as a class C felony. See Amos v. State, 896 N.E.2d 1163, 1171-1172 (Ind. Ct. App. 2008) (holding that the evidence was sufficient to sustain the defendant's burglary conviction because it showed that the defendant entered the victim's apartment with the intent to commit robbery), trans. denied.

For the foregoing reasons, we affirm Riffle's conviction for attempted burglary as a class C felony.

Affirmed.

BAKER, J., and KIRSCH, J., concur.

11