## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 18 2018, 7:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard A. Robertson
Robertson Law Office, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shaun South,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 18, 2018<br><br>Court of Appeals Case No.<br>10A01-1712-CR-2990<br><br>Appeal from the Clark Circuit<br>Court<br><br>The Honorable Vicki L.<br>Carmichael, Judge<br><br>Trial Court Cause No.<br>10C04-1701-F5-20 |

**Bailey, Judge.**

# Case Summary

Shaun South ("South") appeals his conviction, following a jury trial, of burglary, as a Level 5 felony,[1] and his status as a habitual offender.[2]

We affirm.

# Issues

South raises three issues which we restate as:

I. Whether the trial court erred in denying his motion for a directed verdict because it failed to recognize the correct definition of "building or structure of another person" under the burglary statute;

II. Whether the State provided sufficient evidence to support his burglary conviction; and

III. Whether the prosecutor engaged in misconduct by misstating the law in his closing argument.

# Facts and Procedural History

In January of 2017, Jesse Ballew Enterprises ("JBE") owned the building located at 632 Eastern Boulevard in Clark County. Jesse Ballew ("Ballew")

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-50-2-8(a).

leased two thirds of the building (hereinafter, the "leased portion") to a business called Little Star. Matthew Owen ("Owen"), the property manager for Ballew, and Stan Richards used the rest of the building (hereinafter, "storage" portion) for storing vehicles, campers, and other items.

[5] In January of 2017, construction work was still being completed on the leased portion that Little Star was planning to use. Around 4:00 p.m. on January 12, Abtech electricians Joe Ullrich ("Ullrich") and Joshua Broughton ("Broughton") finished their work for the day on the leased portion. Before leaving, Ullrich and Broughton performed a walkthrough of the leased portion, made sure that their ladders and tools were put away and that the building was secure, and departed.

[6] The following morning, Ullrich arrived back at the job site around 7:20 a.m. and used a key to enter the leased portion of the building. Ullrich found that the lights were not working. He retrieved a headlamp from his vehicle and re-entered the building. Broughton arrived sometime thereafter and checked a door on the leased portion of the building, which had had a lockbox from which contractors could obtain a key to the building by entering a numerical code. Broughton observed that the "door handle was completely gone, the lock box was gone, [and] the key was gone." Tr. Vol. II at 115.

[7] When Broughton entered the leased portion of the building he saw that tools, ladders, his tape measure, and his pull-over sweatshirt had been removed from the electric room and placed in a pile near the door. None of these items had

been stacked near the door when Broughton and Ullrich had left the building the day before. Broughton told Ullrich that "somebody's been in here and moved all of our stuff." *Id*. at 118.

[8] Ulrich and Broughton checked the main breaker to the building and found that the power had been shut off. After restoring the power, the men heard a noise coming from the storage portion of the building. Broughton and Ullrich noticed that a ladder had been placed up next to a wall and "that a big hole had been punctured in the wall" that separated the leased portion from the storage portion of the building. *Id*. at 118, 151-52. The hole was approximately ten to twelve feet up the wall.

[9] Ullrich told Broughton to notify a police officer parked across the street about what they had found. Broughton spoke to Clarksville Police Officer Randy Thomas ("Officer Thomas"), and Officer Thomas and Corporal Wayne Townsend ("Cpl. Townsend") went inside the leased portion of the building to investigate. Cpl. Townsend climbed up the ladder and looked through the hole in the wall. While using his flashlight to scan the area on the storage portion of the building, Cpl. Townsend announced, "Police department." *Id*. at 212. As Cpl. Townsend moved his flashlight from one side to the other, he "saw a shadow run from behind a boat or a car that was parked inside." *Id*. The person ran to the back corner of the room. Cpl. Townsend leaned down and told Officer Thomas that he had seen someone run from one area to another.

[10] Cpl. Townsend then climbed through the hole in the wall and dropped down into the storage portion of the building. He opened the locked door between the storage and leased portions so that Officer Thomas could walk through to the storage portion. The officers began checking the area, and Cpl. Townsend approached a back room off the storage portion. Cpl. Townsend found South in the room hiding behind four barrels. Cpl. Townsend identified himself as a police officer and ordered South to stand up and put his hands behind his back. South complied, and the officers placed him in handcuffs.

[11] Clarksville Police Detective Raymond Hall ("Det. Hall") also responded to the suspected burglary. When Det. Hall arrived, he noticed that the handle on a door to the leased portion of the building had been broken off. He also observed that, inside the leased portion of the building, there was a ladder propped up against a wall, and above the ladder there was a hole in the wall. There was a door between the leased and storage portions, and it had a deadbolt lock which could be unlocked by climbing up the ladder and entering the storage portion of the building through the hole in the wall.

[12] After the officers located South, they advised him of his rights. Det. Hall asked South if anyone was in the building with him, and South said no. Det. Hall inquired as to why South was in the building, and South stated that he was a "scrapper," and that he found a door to the building that was propped open. Tr. Vol. II at 21. South said he entered the building, and once inside, he made the hole in the wall to see what was on the other side. Det. Hall noticed that South "had some drywall dust and some insulation material on his jacket." *Id.* at 39.

[13] The officers found that South had parked his girlfriend's vehicle in an area that would be difficult to see from the road. Det. Hall also observed items stacked near a door, so that they could be easily removed from the property. Specifically, in the storage portion of the building, Det. Hall observed that a battery had been removed from a trailer by cutting the battery wires, and the battery was placed by the door, along with a box of tools, a jack, and a ladder. Owen had been in the storage portion of the building the day before the burglary and had seen none of those items stacked by the doorway at that time. Also, Owen had secured the doors to the building when he left that day.

[14] During his investigation, Det. Hall determined that someone had cut the wires to the building's alarm system. The alarm system had been intact and in working order when Owen had left the building the day before the burglary. The police found in South's possession the key from the lockbox that had been torn off the door.

[15] The State charged South with Count I, burglary, as a Level 5 felony; Count II, theft, as a Class A misdemeanor;[3] and Count III, criminal mischief, as a Class B misdemeanor.[4] The State later dismissed Counts II and III and added a habitual offender charge.

---

[3] I.C. § 35-43-4-2(a).

[4] I.C. § 35-43-1-2(a).

[16]     South's jury trial took place on September 26, 2017. Following the presentation of the State's evidence, South made a motion for a directed verdict. South argued that the evidence was insufficient that he "broke and entered into" the building of Jesse Ballew because Little Star was leasing part of the building. Tr. Vol. III at 25. The trial court denied South's motion, and the jury found him guilty of Level 5 felony burglary. South subsequently admitted that he was a habitual offender. The trial court sentenced South to twelve years in prison, with four years suspended to probation. This appeal ensued.

# Discussion and Decision

## Denial of Directed Verdict

[17]     South maintains that the trial court erred when it denied his motion for a directed verdict, which is also called a motion for judgment on the evidence. Ind. Trial Rule 50(A). The rule provides:

> Where all or some of the issues in a case tried before a jury … are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

*Id*. When a defendant moves for a directed verdict or judgment on the evidence, the trial court must grant the motion if: (1) the record is devoid of evidence on one or more elements of the offense; or (2) the evidence presented

is without conflict and subject to only one inference, which is favorable to the defendant. *Herron v. State*, 61 N.E.3d 1246, 1248 (Ind. Ct. App. 2016).

[18] On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Garcia v. State*, 979 N.E.2d 156, 157 (Ind. Ct. App. 2012).

> We must view the evidence in a light most favorable to the party against whom judgment on the evidence would be entered, and we may not invade the province of the jury by weighing the evidence presented or the credibility of witnesses. A defendant's motion for judgment on the evidence should not be granted if the State presents a prima facie case.

*Herron*, 61 N.E.3d at 1248-49 (citing *Garcia*, 979 N.E.2d at 158).

[19] South was convicted of burglary, as a Level 5 felony, i.e., breaking and entering the building or structure of another person, with intent to commit a felony or theft in it. I.C. § 35-43-2-1. South's sole basis for his motion for a directed verdict is his contention that the term "building or structure of another person" means only a building another person possesses and *not* a building another person owns. Appellant's Br. at 9-11. He asserts that he should have been granted a directed verdict because the State failed to show that JBE, the named victim in the charging information, had a "possessory interest" in the property. *Id.* at 9. In support, South points to *Wallace v. State*, 896 N.E.2d 1249 (Ind. Ct.

App. 2009), *trans. denied*.[5]  However, that case supports the opposite contention; that is, in *Wallace* we held that "it is well settled that burglary is a crime against possessory interest or rightful possession of the premises[;]" thus, it was "sufficient to show rightful possession *or* ownership" of the premises.  *Id*. at 1252 (emphasis original); *see also*, *State v. Dively*, 431 N.E.2d 540, 542 (Ind. Ct. App. 1982) (citing *Bradley v. State*, 195 N.E.2d 347 (Ind. 1964)) ("Burglary is a crime against the possessory interest as well as actual ownership.").  To prove this element of the offense of burglary, the State need only show that the property was a structure or building of a person other than defendant.  *Dively*, 431 N.E.2d at 542.

[20]  The State made that showing in the instant case; it presented evidence that JBE owned the entire building.  The trial court did not err in denying South's motion for a directed verdict.

## Sufficiency of the Evidence

[21]  South challenges the sufficiency of the evidence to support his conviction for burglary.  Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor

---

[5]  South also cited two memorandum decisions of this court, in contravention of Indiana Appellate Rule 65(D).  We remind counsel that memorandum decisions "*shall not be cited* to any court except by parties to the case to establish *res judicata*, collateral estoppel, or law of the case." Ind. Appellate R. 65(D) (emphasis added).

judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.

Moreover, "[a] conviction may be based on circumstantial evidence alone so long as there are reasonable inferences enabling the factfinder to find the defendant guilty beyond a reasonable doubt." *Lawrence v. State*, 959 N.E.2d 385, 388 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

[22]   To support South's conviction of burglary as a Level 5 felony, the State was required to show that South (1) broke and entered (2) a building or structure of another person (3) with intent to commit theft in it. I.C. § 35-43-2-1. South does not contend that the evidence was insufficient to prove that he broke and entered into the building, and, as we previously noted, his contention that the State had to provide evidence that JBE possessed, rather than owned, the property at issue is incorrect. South's only other contention regarding the elements of the offense is his claim that the State failed to provide sufficient evidence that he intended to commit theft in the building. That contention also fails.

[23]   It is well-established that a fact-finder may infer intent from circumstantial evidence. *E.g.*, *Brown v. State*, 64 N.E.3d 1219, 1230 (Ind. Ct. App. 2016), *trans.*

*denied*. Such evidence need not "be insurmountable, but it must provide a solid basis to support a reasonable inference that the defendant intended to commit" theft. *Desloover v. State*, 734 N.E.2d 633, 635 (Ind. Ct. App. 2000) (quotation and citation omitted), *trans. denied*. And, although the fact of breaking and entering "is not itself sufficient to prove entry was made with the intent to commit a felony, such intent may be inferred from the subsequent conduct of the defendant inside the premises." *Jewell v. State*, 672 N.E.2d 417, 427 (Ind. Ct. App. 1996), *trans. denied*; *see also Patterson v. State*, 729 N.E.2d 1035, 1042 (Ind. Ct. App. 2000) (citation omitted) (holding the requisite intent to commit a felony typically can be inferred from the subsequent conduct of the individual inside the premises or by the manner in which the crime was committed.) Thus, in *Lewis v. State*, for example, the evidence was sufficient to support a burglary conviction where the defendant was the only person seen inside the building during the burglary and the property to be stolen had been moved outside the building. 700 N.E.2d 485, 487 (Ind. Ct. App. 1998).

[24] Here, not only did South tell the police that he was a "scrapper" who had cut a hole in the wall in order to "see what was on the other side," Tr. Vol. II at 21-22, but he was the only person in the building when the electricians arrived that morning. His car was parked outside the building, and tools and other materials had been moved to, and piled by, the door. And, although South claimed he entered the building through an open door, three other witnesses testified that they had secured the building before leaving the night before. Furthermore, the lockbox that held the key was broken and the key was found

on South's person. That was sufficient evidence that he intended to steal items from the building.

[25] South speculates that someone else could have piled the items near the door, and that the items piled by the door would not have all fit into his car. However,

> [i]t is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been drawn. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. *Thompson v. State*, 804 N.E.2d 1146.

*Jones v. State*, 22 N.E.3d 877, 879 (Ind. Ct. App. 2014).

[26] The State presented sufficient evidence to support South's conviction for burglary.

# Prosecutorial Misconduct

[27] Finally,[6] South contends that the prosecutor committed misconduct during his closing argument. However, South did not preserve this issue for our review. When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). If the party is not satisfied with the admonishment, then he should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* South neither requested an admonishment nor a mistrial. Therefore, his claim is waived. *Id.*

[28] Where a claim of prosecutorial misconduct has not been properly preserved, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Id.* Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id.* "It is error that makes 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm.'" *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

[29] Here, South cannot establish that the prosecutor engaged in misconduct in the first place, so we do not reach the issue of fundamental error. Whether a

---

[6] South also states in passing that the trial court "failed to instruct as to what it meant for something to be the 'property of' another." Appellant's Br. at 18. To the extent South intended to raise that contention as an issue on appeal, he waived it by failing to provide cogent argument. Ind. Appellate Rule 46(A)(8).

prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id.* South contends that the prosecutor engaged in misconduct by misstating the law when he told the jurors in closing argument that it was sufficient that the State prove JBE owned the property in question. He again asserts that the State must prove possession, rather than ownership, of the property. However, as we held above, South is incorrect. *Wallace*, 896 N.E.2d at 1252. The prosecutor did not misstate the law regarding the "building or structure of another person" element of burglary.

# Conclusion

[30] South's assertions regarding a directed verdict and prosecutorial misconduct fail because Indiana law clearly provides that a "building or structure of another person" under the burglary statute refers to a building owned *or* possessed by someone other than the defendant. I.C. § 35-43-2-1; *Wallace*, 896 N.E.2d at 1252. And the State provided sufficient evidence of South's intent to steal items from the property to support his conviction of burglary.

[31] Affirmed.

Mathias, J., and Bradford, J., concur.