# FOR PUBLICATION



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GERALD CLEMONS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1210-CR-587 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-1203-FC-14547

**October 29, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Gerald Clemons appeals his conviction for possession of cocaine. Clemons raises one issue, which we restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

In the early morning hours of March 3, 2012, Indianapolis Metropolitan Police Officer Brad Alford responded to a dispatch regarding a domestic disturbance at an apartment complex in Marion County. When Officer Alford arrived, he heard muffled screaming and banging coming from an upstairs apartment. He opened the exterior building door, entered the narrow common hallway of the apartment building, and heard noise coming from the apartment up the stairs and to the left. Officer Alford shined his flashlight in the hallway and noticed blood splatter on the walls and on the handrail leading up to the door from which the noise was coming. He went up the stairs, stopped just outside the closed door to the apartment unit occupied by Clemons and his girlfriend, Kayla Conner, and heard "belligerent yelling and screaming" coming from inside the apartment. Transcript at 24. Clemons said, "I'm going to f--- you up, b----, I'm going to f------ kill you." Id. Officer Alford kicked the door loudly in an attempt to attract the attention of someone inside the apartment. The yelling and banging ceased, and about five to ten seconds later, Officer Alford heard footsteps coming toward the door. As no one answered the door, Officer Alford again knocked very loudly and announced, "police officer, open the door." Id. at 25. In response, he heard a muffled female voice very clearly say, "help me, please help me." Id. Clemons asked "who is it" from inside the apartment, and Officer Alford stated that he was a police officer and to open the door. Id.

2

Clemons opened the door about six inches, and Officer Alford noticed that he was not wearing a shirt, was sweating, and that the room was disheveled with "stuff thrown everywhere" and "broken items and blood on the ceiling, floor, and walls." Id. at 26. Officer Alford entered the apartment, ordered Clemons at gunpoint to move to the ground on his stomach and show his hands, and noticed that Clemons had blood all over his pants and that there was blood splatter on all four walls of the room. Clemons went to his knees but did not show his hands. Officer Ryan Archer arrived at the scene and also ordered Clemons to show his hands, but he still did not comply. Officer Archer deployed his taser, but Clemons still refused to show his hands. Officer Archer used his taser again, Clemons rolled over to his stomach and put his hands behind his back, and Officer Alford handcuffed him. Clemons had blood on his hands, and Officer Archer asked Clemons what had happened. Clemons stated "she cut me." Id. at 87. Officer Archer asked him to be more specific but Clemons did not wish to say anything else.

Officer Alford then went to the back bathroom and found Conner covered in blood and in the fetal position in the bathtub. He noticed blood on every wall, the ceiling, and the floor of the bathroom. He told Conner, who "was in and out of consciousness" and had blood in her hair, that the medics were on the way to help her. Id. at 35. Medics took her out of the apartment on a stretcher. Officers followed a trail of blood and discovered a kitchen knife, about six inches long, with blood on it underneath the kitchen sink. Clemons was arrested and transported to the arresting processing center (the "APC"), and a search at the APC revealed a substance in Clemons's sock which was later determined to be 0.6963 grams of cocaine.

3

The State charged Clemons, as amended, with battery as a class C felony, possession of cocaine as a class D felony, and resisting law enforcement as a class A misdemeanor.[1] A jury trial was conducted during which the jury heard testimony from, among others, Officer Alford, Officer Archer, Conner, and Clemons. During her testimony, Conner indicated that she had been drinking the night of the incident, that she was highly intoxicated, that part of the subject of her argument with Clemons was cocaine, that she wanted to use the cocaine, that Clemons took it from her, and that the argument became heated. Conner indicated that she wanted the cocaine and that Clemons would not give it back. The State also presented photographic evidence of the blood splatter in the hallway and throughout the apartment, including on the walls, in the bathtub, and in other areas, the knife, and Conner's injuries.

Following the presentation of the State's case, Clemons moved for a directed verdict, and the court granted the motion as to the charges for battery and resisting law enforcement.[2] The jury found Clemons guilty as charged of possession of cocaine as a class D felony. The court noted that Clemons had no prior criminal history, that the circumstances of the crime were unlikely to reoccur, and that the mitigating circumstances outweighed any aggravating circumstances, entered judgment of

---

[1] The State originally charged Clemons with two counts of battery as class C felonies, criminal confinement as a class D felony, and possession of cocaine as a class D felony.

[2] Specifically, the trial court noted, with respect to the charge for resisting law enforcement, that both officers testified that Clemons was never aggressive towards them and did not come towards or touch them, and as a result there was no evidence that "would qualify as being forcibly resisting." Transcript at 140. With respect to the charge for battery, the court stated: "the only evidence that the State has presented in it's [sic] case in chief is that two people, both of them injured were in an apartment when the police got there. There is no evidence of who struck who except the defendant saying she stabbed me. So there's absolutely no evidence as to what happened in that apartment to Kayla Conner." Id.

4

conviction as a class A misdemeanor, and sentenced Clemons to one year suspended to probation with a condition that he perform forty hours of community service.

ISSUE AND STANDARD OF REVIEW

The issue is whether the evidence is sufficient to sustain Clemons's conviction for possession of cocaine. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

DISCUSSION

Ind. Code § 35-48-4-6 provides in part that a person who "knowingly or intentionally possesses cocaine (pure or adulterated) . . . commits possession of cocaine . . . , a Class D felony, except as provided in subsection (b)." Clemons contends that, while he was in possession of the cocaine discovered in his sock, the State failed to prove beyond a reasonable doubt that his possession of cocaine was not justified by reason of necessity.

In Dozier v. State, this court stated:

In order to prevail on a claim of necessity, the defendant must show (1) the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively

5

reasonable under all the circumstances, and (6) the accused must not have substantially contributed to the creation of the emergency.

709 N.E.2d 27, 29 (Ind. Ct. App. 1999) (citing Toops v. State, 643 N.E.2d 387, 390 (Ind. Ct. App. 1994)). In order to negate a claim of necessity, the State must disprove at least one element of the defense beyond a reasonable doubt. Id. (citation omitted). The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. Id. The decision whether a claim of necessity has been disproved is entrusted to the fact-finder. Id. Where a defendant is convicted despite his claim of necessity, this court will reverse the conviction only if no reasonable person could say that the defense was negated by the State beyond a reasonable doubt. Id. The Indiana Supreme Court has noted that necessity is an affirmative defense and that an affirmative defense "admits all the elements of the crime but proves circumstances which excuse the defendant from culpability." Melendez v. State, 511 N.E.2d 454, 457 (Ind. 1987). Indiana Trial Procedure Rule 8(C) provides in part that "[a] responsive pleading shall set forth affirmatively and carry the burden of proving . . . any other matter constituting an . . . affirmative defense." In Custer v. Plan Comm'n of City of Garrett, this court noted that Indiana Trial Procedure Rule 15(B)[3]

---

[3] Ind. Trial Rule 15(B) provides:

Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense

6

"provides an escape hatch. If the issue is tried by the implied consent of the parties it is treated as if raised by the pleadings." 699 N.E.2d 793, 795 (Ind. Ct. App. 1998) (citing Puckett v. McKinney, 175 Ind. App. 673, 676, 373 N.E.2d 909, 911 (1978) (holding that the defendant had not waived an affirmative defense even though he did not assert it in the pleadings as evidence which tended to establish the defense was elicited at trial and admitted without objection and thus that "it may fairly be assumed the issue was tried with the implied consent of the parties")).

Clemons specifically argues that "[t]he reason the situation escalated into such a bloody conflict is because [he] wanted to prevent [Conner] from using the cocaine," that he "possessed the cocaine to avoid a greater harm – [Conner's] use of it," that he "was presented with the choice of two evils – 1) allowing [Conner] to use the cocaine and harm herself, or 2) possessing the cocaine to prevent her from using the cocaine," and that his "possession of the cocaine was the lesser of the two evils, and that he made the right choice in taking it away from [Conner]." Appellant's Brief at 8. Clemons further asserts that there "was no adequate alternative to the commission of the act – if [he] had not taken the cocaine from her, [Conner] was intent on using it," that the "bloody situation the police walked into upon their arrival shows that [he] did not have the time to do anything else with the cocaine yet," that the harm caused was not disproportionate to the harm avoided of Conner's use of it, and that he "did not substantially contribute to the creation of the emergency – he did not help buy the cocaine or pick it up for her." Id. at 9.

_____

upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The State maintains that Clemons failed to the plead the defense of necessity as an affirmative defense prior to trial, that he did not tender, request, or receive any instructions on the defense of necessity, that it is not clear that he argued the defense of necessity at trial, and that, as a result, he forfeited the defense. The State further argues that Clemons failed to establish the elements of a defense of necessity as set forth in Dozier v. State, 709 N.E.2d 27 (Ind. Ct. App. 1999), that Clemons did not tell the police that he had been attempting to take cocaine from Conner to prevent her from using it, that he fails to show that less confrontational and violent means could have prevented Conner from using the cocaine, and that Conner's condition of "lapsing in and out of consciousness while lying in a pool of blood in the bathtub" presented a question regarding whether Clemons's confiscation of the cocaine was not "disproportionate to the harm avoided." Id. at 10-11. Additionally, the State notes that Clemons threatened Conner by stating that he was going to "f--- you up, b----" and "I'm going to f------ kill you," and that, to the extent that Conner's use of cocaine was a significant evil, "it would appear that it was such an evil because it caused the horrific fight" between Conner and Clemons and thus that Clemons substantially contributed to the creation of an emergency. Id. at 11. In his reply brief, Clemons asserts that he did not forfeit his necessity defense because it was tried with the implied consent of the parties, that, through Conner's testimony, he raised the defense of necessity, and that his closing argument shows he intended to raise the defense of necessity.

We first observe that Clemons does not point to the record to show that he raised a defense of necessity as an affirmative defense prior to trial. To the extent that the defense

of necessity was tried with the implied consent of the parties, we conclude that, based upon the evidence, a reasonable person could say that the defense was negated by the State beyond a reasonable doubt and thus that reversal of Clemons's conviction is not warranted.

The record reveals that Conner had been drinking the night of March 3, 2012, that she was highly intoxicated, that part of the subject of her argument with Clemons was cocaine, that she wanted to use the cocaine, that Clemons took it from her and would not give it back, and that the argument became heated. The jury heard Officer Alford testify that, upon his arrival at the apartment building, he heard muffled screaming and banging coming from the apartment, that he noticed blood splatter on the walls and on the handrail leading up to the apartment door, that he heard "belligerent yelling and screaming" coming from inside the apartment, and that he heard Clemons say "I'm going to f--- you up, b----, I'm going to f------ kill you." Transcript at 24. Officer Alford also heard Conner say "help me, please help me." Id. at 25. The evidence shows that Clemons was sweating, had blood on his pants, and was not compliant with the officers' orders to show his hands. The evidence further reveals that the living room of the apartment was disheveled and that blood splatter was on all four walls, that there was blood on every wall, the ceiling, and the floor of the bathroom, that Conner was discovered covered in blood and with blood in her hair in the fetal position in the bathtub, and that she was "in and out of consciousness." Id. at 35. The evidence also reveals that officers followed a trail of blood to discover a six-inch kitchen knife with blood on it

underneath the kitchen sink. The police first learned of the cocaine when Clemons was searched at the APC.

Even if the jury believed that Clemons's act of possession of the cocaine was to prevent Conner from using or abusing the drug, a reasonable jury could find, based upon the testimony and evidence presented, that there was an adequate alternative to Clemons's actions, that the harm caused by his actions was disproportionate to the harm avoided, that Clemons did not have a good faith belief that his actions were necessary to prevent greater harm, that his belief that his actions were necessary was not objectively reasonable under all the circumstances, or that Clemons substantially contributed to the creation of the emergency. See Dozier, 709 N.E.2d at 29. Based upon the evidence, we find, to the extent that the defense of necessity was tried with the implied consent of the parties, that there is substantial evidence of probative value such that a reasonable trier of fact could have concluded beyond a reasonable doubt that the State disproved at least one element of the defense of necessity and that Clemons was guilty of possession of cocaine.

CONCLUSION

For the foregoing reasons, we affirm Clemons's conviction for possession of cocaine.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.

10