## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2017, 9:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Codi Butler,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 31, 2017<br><br>Court of Appeals Case No.<br>49A02-1610-CR-2415<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt M. Eisgruber, Judge<br><br>The Honorable Steven J. Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G01-1509-F3-34511 |

**Najam, Judge.**

## Statement of the Case

Codi Butler appeals his convictions, following a bench trial, for criminal confinement, as a Level 3 felony, and residential entry, a Level 6 felony. He raises one issue on appeal, namely, whether the State presented sufficient evidence to support his convictions. We affirm.

## Facts and Procedural History

On September 24, 2015, Elliott Bevers was in his apartment on South East Street in Indianapolis playing video games when he heard the two women who lived next door screaming and cursing as they ran up the stairs and closed their apartment door. Bevers opened his door and looked out to see Butler, who he did not know and had never seen before, coming up the stairs with a gun. Bevers closed his door and attempted to hide in a small closet. Butler kicked in Bevers' door and entered Bevers' apartment. Bevers saw "a lot of blood on [Butler's] body," and Butler seemed to be scared. Tr. Vol. II at 29. Bevers said, "hello" to Butler, *id*. at 28, and Butler responded, "I'm not going to shoot you. Shut the f--- up. I'm not going to shoot you," *id*. at 21. Butler waved his gun in Bevers' direction and Bevers could see the entire gun, including the barrel. Butler told Bevers, "I'm bleeding." *Id*. at 29. Bevers asked Butler, "Were you shot?" *Id.* Bevers replied, "I was shot." *Id*.

Bevers was afraid for his safety and did not feel free to leave his apartment. When Bevers first offered to call 9-1-1 for Butler, Butler said, "no." *Id*. at 22. When Bevers offered a little while later to call an ambulance for Butler, Butler

responded, "yes." *Id*. After Bevers called 9-1-1, Butler stated, "They're coming to kill me." *Id*. at 29.

[4] Bevers saw red lights outside the apartment through his bathroom window. Butler, still holding a gun, approached Bevers. Butler did not point his gun at Bevers or push Bevers or speak to Bevers at this time, but he made "enough" physical contact with Bevers that Bevers believed he had to go into the bathroom with Butler. *Id*. at 24. The two men entered the bathroom and Butler looked out the window. When Butler saw the police, he said to Bevers, "Why did you tell them I had a gun?" *Id*. Bevers responded that he did not tell the police that Butler had a gun. Butler then rubbed his gun on his shirt and walked into the main room of the apartment. Butler moved a trundle bed partly in front of the apartment door, and he then laid down on the floor in between the bed and the wall, to the side of the front door.

[5] Officers Jose Navarro and Jennifer Asher of the Indianapolis Metropolitan Police Department ("IMPD") responded to a dispatch report that a black male wearing a white shirt and "khakis" had "purportedly" fired six gun shots in the area of Lincoln and New Jersey streets and was running toward the Emhardt building, which was Bevers' apartment building. *Id*. at 49-50. When Officers Navarro and Asher arrived outside Bevers' apartment building, Officer Navarro noticed damage to the exterior door of the building. The officers then checked inside the apartment building and Officer Navarro noticed damage to Bevers' apartment door, which was slightly open. The officers announced themselves

and pushed their way into the apartment, past the trundle bed blocking the door.

[6]     Upon entering Bevers' apartment, Officer Navarro saw Butler lying on the floor to the left of the door. Officers Navarro and Asher also saw Bevers toward the back of the apartment, and he appeared to be shaking, nervous, and scared. While Officers Navarro and Asher checked the rest of the apartment, IMPD Officer Gregory Popcheff arrived and saw Butler lying on the floor. Officers Navarro and Asher went to Butler to see if he was injured. When they lifted Butler's shirt, a small black handgun fell out of the shirt. EMS personnel arrived at the scene. The officers and EMS personnel who inspected Butler did not find any gunshot wounds on him. The officers arrested Butler and placed him in an ambulance. While paramedics were evaluating Butler for injuries, he began to struggle. Butler disobeyed Officer Popcheff's commands and resisted the officer's attempts to place handcuffs on him.

[7]     The State charged Butler with Count I, criminal confinement as a Level 3 felony; Count II, carrying a handgun without a license, as a Level 5 felony; Count III, residential entry, a Level 6 felony; Count IV, resisting law enforcement, as a Class A misdemeanor; and Count V, pointing a firearm, as a Level 6 felony. Butler waived a jury trial and his bench trial occurred on September 9, 2016. At his trial, Butler admitted that he did not have a license to carry the handgun, that he had kicked in Bevers' door, and that he had resisted law enforcement officers while they tried to restrain him in the ambulance. But Butler maintained that he broke into Bevers' apartment due to

an emergency—that is, he was trying to escape several men who had pulled a gun on him earlier and who he thought were chasing him. Butler testified that he did not pull out his own gun during the encounter with the other men. Butler testified that he told the medics and officers in the ambulance that "they tried to kill [him]." Tr. Vol. II at 68. However, Officers Navarro and Popcheff testified that they did not hear Butler make that statement and they did not hear him tell them that he was in danger.

[8] Officer Popcheff testified that Butler matched the description of the suspect in the September 24, 2015, dispatch report. The State introduced its Exhibit 19, to which Butler stipulated. That exhibit, which was a CD recording of telephone conversations Butler had while he was in jail for the charges in this case, was admitted. In particular, the following portions of Exhibit 19 were played for the court:

> Unidentified Male: "Do I know who did it?"
>
> Butler: "What's that?"
>
> Male: "The shooting."
>
> Butler: "Ah, sh--[,] bro, I jumped the gun first[,] bro."

Appellee's Br. at 13. And:

> Unidentified Female: "And you didn't[,] like, stab somebody
> with a knife, or pull a gun or nothing?"
>
> Butler: "Yeah I had pulled a gun [laughs] it was . . ."

Female: "There you go, now I got ya."

*Id.*[1]

[9] The trial court found Butler guilty of Count I, criminal confinement, as a Level 3 felony; Count II, carrying a handgun without a license, as a Level 5 felony; Count III, residential entry, a Level 6 felony; and Count IV, resisting law enforcement, as a Class A misdemeanor. The court entered judgment and sentenced Butler to concurrent terms of nine years, three years, one year, and one year on the respective counts. The court found Butler not guilty of Count V, pointing a firearm. This appeal ensued.

## Discussion and Decision

[10] Butler challenges the sufficiency of the evidence to support his convictions of criminal confinement and residential entry.[2] Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial

---

[1] The Court Reporter was unable to locate the CD of the jail telephone calls for inclusion in the record on appeal. Ex. Vol. I at 22-23. However, Butler does not dispute the accuracy of the above quotes of two of the jail telephone calls as contained in the State's brief.

[2] Butler does not appeal his convictions for carrying a handgun without a license and resisting law enforcement.

evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.

[11] To support Butler's conviction of criminal confinement, as a Level 3 felony, the State had to prove: (1) Butler; (2) knowingly or intentionally; (3) confined Bevers without his consent; (4) while armed with a handgun. Ind. Code § 35-42-3-3 (2015). To support his conviction of residential entry, the State was required to prove: (1) Butler; (2) knowingly or intentionally; (3) broke and entered Bevers' dwelling. I.C. § 35-43-2-1.5. Butler does not deny that he knowingly confined Bevers without his consent while armed with a handgun. Nor does he deny that he knowingly broke and entered Bevers' dwelling. Rather, Butler contends that he "presented all the elements of the defense of necessity"—thus showing his actions were justified—and that the State failed to rebut any of those elements beyond a reasonable doubt. Appellant's Br. at 12.

[12] When a defendant raises the affirmative defense of necessity, he must show:

> (1) the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively reasonable under all the circumstances, and (6) the accused must not have substantially contributed to the creation of the emergency.

*Dozier v. State*, 709 N.E.2d 27, 29 (Ind. Ct. App. 1999) (citing *Toops v. State*, 643 N.E.2d 387, 390 (Ind. Ct. App. 1994)).[3] To negate a claim of necessity, the State must disprove *at least one* element of the defense beyond a reasonable doubt. *Id.* "Where a defendant is convicted despite his claim of necessity, this court will reverse the conviction only if no reasonable person could say that the defense was negated by the State beyond a reasonable doubt." *Clemons*, 996 N.E.2d at 1285.

[13] Assuming without deciding that Butler proved all six necessity elements by a preponderance of the evidence, the trial court did not err in holding that the State provided sufficient evidence to disprove at least one of those elements beyond a reasonable doubt. Although the parties discuss several of the necessity elements, we only address whether Butler substantially contributed to the nature of the emergency. We hold that the State provided sufficient evidence that he did.

[14] Although Butler claims that he did not initiate the shooting with other men in the area of Lincoln and New Jersey streets, the State provided sufficient evidence from which the trial court could reasonably infer that he did. The

---

[3] Thus, Butler is incorrect when he maintains, without citation to authority, that he did not have the burden of proving the affirmative defense of necessity by a preponderance of the evidence. Appellant's Br. at 4. Necessity is an affirmative defense in which the defendant "admits all the elements of the crime, but proves circumstances which excuse the defendant from culpability." *Clemons*, 996 N.E.2d at 1285 (quoting *Melendez v. State*, 511 N.E.2d 454, 457 (Ind. 1987)). And "[a] defendant bears an initial burden of proof by a preponderance of the evidence on any affirmative defense." *Wilson v. State*, 997 N.E.2d 38, 44 (Ind. Ct. App. 2013) (quoting *Adkins v. State*, 887 N.E.2d 934, 938 (Ind. 2008)), *trans. denied*.

IMPD officers testified that the September 24, 2015, dispatch report was that a black male wearing a white shirt and khakis had purportedly fired six gun shots in the area of Lincoln and New Jersey streets and was running toward the Emhardt building, which was Bevers' apartment building. Officer Popcheff testified that Butler, who was found at Bevers' apartment soon thereafter, matched the dispatch report description of the suspect and possessed a gun.

[15] Moreover, the State presented evidence, to which Butler stipulated, of telephone conversations Butler had while in jail. In those calls, Butler stated, in reference to the shootings he said took place on September 24, 2015, that he had "jumped the gun first," and that he "had pulled a gun." Appellee's Br. at 13. Butler does not deny that he made those statements or that they referred to the events of September 24. Rather, he insists that the State and the court misinterpreted them. However, this is merely a request that we reweigh the evidence, which we cannot do. *Clemons*, 996 N.E.2d at 1285. It was reasonable for the trial court to conclude that Butler substantially contributed to the creation of the alleged emergency from the evidence of Butler's identity, his location at the scene, and his possession of a gun, and from the evidence that he was the first to pull a gun during the shooting.

[16] A reasonable person could conclude that the State presented sufficient evidence to disprove beyond a reasonable doubt Butler's claim that he did not substantially contribute to the creation of the emergency that allegedly necessitated his actions. *Id*. As the State need only negate one of the six necessity defense elements, *Dozier*, 709 N.E.2d at 29, we hold that there was

sufficient evidence to support Butler's convictions of criminal confinement and residential entry.

[17]     Affirmed.

Riley, J., and Bradford, J., concur.