## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2017, 5:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Blake Patrick Hansen, *Appellant-Defendant,* | June 13, 2017 |
| v. | Court of Appeals Case No. 41A01-1603-CR-476 |
| | Appeal from the Johnson Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable K. Mark Loyd, Judge |
| | Trial Court Cause No. 41C01-1510-F3-66 |

**Najam, Judge.**

## Statement of the Case

Blake Patrick Hansen appeals his convictions, following a jury trial, for criminal confinement and intimidation. He raises one issue on appeal, namely, whether the State presented sufficient evidence to support his convictions. We affirm.

## Facts and Procedural History

From the evening of Friday, October 9, until Sunday, October 11, 2015, Hansen and his girlfriend, Kelli Smith, spent the weekend alone at Smith's father's, Eric Smith's ("Eric"), house in New Whiteland. On the morning of Saturday, October 10, Hansen and Smith were watching television in the residence, and Smith received a call on her cellular telephone from a male friend. Hansen answered the telephone call and, after hanging up, he began to swear at Smith and call her names. Hansen also spoke with his cousin on his own cellular telephone, and his cousin told him that Smith had had a previous drug relapse.

Hansen then repeatedly struck Smith in the face, kicked her in the ribs, and threw her to the ground while Smith screamed and cried. Hansen called Smith a "piece of sh--" and told her that she "didn't deserve to live." Tr. Vol. I at 136. He also called her a "whore." *Id*. at 150-51. At one point during the weekend, Hansen ordered Smith into the kitchen where he grabbed a large knife and pushed Smith up against the washer and dryer. Hansen put the knife to Smith's stomach, and he threatened that if she told anyone what he had done, he would kill her.

[4] Hansen then dragged Smith into the bathroom by her hair, calling her a "whore" and a "slut." *Id*. at 137. Hansen then forced Smith to get into the bathtub, and he told her it would be easier to get rid of the evidence that way. Hansen took off his shirt and hoodie, put the knife up against Smith's throat, and told her that if she told anybody he would kill her and hurt her little sister. Smith attempted to push the knife away from her neck and began crying for her father, as Hansen again told her she did not deserve to live. Smith was unable to leave the bathroom during this encounter. Hansen quickly drew the knife away from Smith's neck, which cut her finger and caused it to bleed. Hansen then sat on the toilet seat and asked Smith why she made him do this to her. Hansen then allowed Smith to clean up her blood. Smith heard, but did not see, Hansen go back into the kitchen to put the knife away.

[5] On Sunday, Smith told Hansen that her father would arrive at the house soon. Hansen became agitated and told Smith to put on makeup and put her hair up in a way that concealed her injuries, which Smith did. Hansen told Smith that, if she told her father what had happened over the weekend, Hansen would "beat the shit" out of her father. *Id*. at 142. Eric then arrived and drove both Smith and Hansen to Smith's mother's, Judith Smith's ("Judith"), apartment. Smith persuaded Hansen to remain outside while Smith went inside. Once inside the house, Smith locked the door and began shaking and crying uncontrollably as she stated to her mother that Hansen had beaten her. Judith saw that Hansen was still waiting outside of her house while she called 9-1-1.

[6]     After New Whiteland Police Department ("NWPD") officers arrived at Judith's house, Smith took fifteen to twenty minutes longer to calm down. She then informed the police that Hansen had threatened her with a knife from her father's kitchen, and she described the knife. NWPD Officer Adam Bennett interviewed Smith at Judith's house and took pictures of Smith's injuries. Smith had bruising on her eyes, cheeks, nose, mouth, forehead, chin, and behind her left ear. She also had a large knot on her forehead and rugburns on her left and right knees and right elbow. She had a cut and dried blood on one of her fingers.

[7]     The police arrested Hansen and the State charged him with Count I, criminal confinement with a deadly weapon, as a Level 3 felony; Count II, intimidation with a deadly weapon, as a Level 5 felony; County III, battery by means of a deadly weapon, as a Level 5 felony; and Count IV, domestic battery with a prior conviction, as a Level 6 felony. At the January 14, 2016 jury trial, the knife Hansen used to threaten Smith was admitted into evidence as State's Exhibit 10 with no objection. The State also presented photographs of Smith's injuries, which were admitted without objection. And the State presented an audio recording of a telephone conversation between Smith and Hansen while Hansen was in jail, which was also admitted without objection.

[8]     The jury found Hansen guilty of criminal confinement with a deadly weapon and intimidation with a deadly weapon, as charged. The jury also found Hansen guilty of battery, as a Class A misdemeanor. And the jury found

Hansen not guilty of domestic battery with a prior conviction. The trial court entered judgment and sentenced Hansen accordingly, and this appeal ensued.

## Discussion and Decision

[9] Hansen challenges the sufficiency of the evidence to support his convictions for criminal confinement and intimidation.[1] Our standard of review of the sufficiency of the evidence is well-settled:

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013), *trans. denied*.

[10] To support Hansen's conviction for criminal confinement, as a Level 3 felony, the State had to prove: (1) Hansen; (2) knowingly or intentionally; (3) confined Smith without her consent; (4) while armed with a deadly weapon. Ind. Code § 35-42-3-3 (2015). To support his conviction for intimidation, as a Level 5 felony, the State was required to prove: (1) Hansen; (2) knowingly or intentionally; (3) communicated a threat to Smith; (4) with the intent that Smith

---

[1] Hansen does not appeal his conviction for battery.

be placed in fear of retaliation for a prior lawful act; and 5) while Hansen drew or used a deadly weapon. I.C. § 35-45-2-1(b)(2)(A). Hansen's only contentions on appeal are that the State failed to provide sufficient evidence that he drew a knife on Smith or that his threats against Smith were made in retaliation for Smith's prior lawful action. We disagree with both contentions.

[11] Smith testified that Hansen held her at knife-point while they were at her father's house and that Hansen later put the knife back in the kitchen. Eric testified that, when he returned to his home on Sunday, he found a knife with blood on it in his kitchen. NWPD Officer Donica testified that, later that same day, he found, photographed, and retrieved that same knife in Eric's kitchen. Smith identified the knife as the one Hansen had used on her, and it was admitted into evidence without objection.[2] And the State presented an audio tape of a telephone conversation between Smith and Hansen on October 13, 2015, while Hansen was in jail. That audio tape was admitted as State's Exhibit 15A, without objection, and it was played for the jury. The conversation was, in relevant part:

> Smith: . . . 'cause they found the knife that you . . .

---

[2] Hansen asserts that "the most important fact to note regarding the knife" is that Eric, Smith's father, had access to the crime scene before the knife was retrieved by the police. Appellant's Br. at 15, 21. However, Hansen did not object to the admission of the knife into evidence, and he does not argue on appeal that its admission was fundamental error.

Hansen: How would they find that? You had—did you tell them about that?

Smith: . . . and 'cause it had blood on it.

Hansen: You told them about that?

Smith: Well, I had a huge cut on my finger.

Hansen: We gotta stop talking about this sh-- on the phone, they are recording all of this.

***

Hansen: How did the knife get—how did the knife get brought into it?

Smith: Because they saw my finger and then they searched the house and everything, 'cause everything was all pushed around and . . .

Hansen: There's no way they would find that with my fingerprints on it, there's no way.

Smith: There's blood all over it.

Hansen: Did you write a statement?

Smith: You didn't wash it off.

Hansen: Did you write a statement?

Smith:  Yeah.

Hansen:  You did?

Smith:  Yeah.

Hansen:  What's it say?

Smith:  That you—that you're just punching me  . . .

Hansen:  And does it say  . . .

Smith:   . . . because you thought I was cheating on you.

Hansen:  Does it say something about a knife?

Smith:  No, it didn't say anything about a knife.

Hansen:  You didn't say anything?  Huh?

Smith:  I didn't say anything about a knife, but they found it because they searched my Dad's house.

Hansen:  *I put it back up*.

State's Exhibit 15A at 6:39 – 6:56 and 10:55 – 11:56 (emphasis added).  The State presented sufficient evidence that Hansen confined Smith while armed

with a knife. Hansen's suggestions to the contrary are simply requests that we reweigh the evidence, which we will not do.[3] *Clemons*, 996 N.E.2d at 1285.

[12] The State also presented sufficient evidence that Hansen threatened Smith in retaliation for Smith's prior lawful act. It is uncontested that Hansen did not become violent with Smith until after Smith had received a telephone call from another man. Smith consistently testified that Hansen became angry with her because she had received that telephone call. She testified that Hansen "did not like me ever talking to males, period," and that, after the telephone call from the man, Hansen called her a "whore" while beating and kicking her. Tr. Vol. I at 135, 150-51. And in the telephone conversation from jail, Smith again stated that Hansen was punching her because he thought she had cheated on him. Thus, regardless of whether Hansen threatened Smith for any *additional* reason—such as to keep her from reporting the abuse or because of a drug relapse—there is a "clear nexus" between Smith's lawful act of receiving a telephone call and Hansen's threats against Smith's life. *Chastain v. State*, 58 N.E.3d 235, 240 (Ind. Ct. App. 2016) (quoting *Roar v. State*, 52 N.E.3d 940, 944 (Ind. Ct. App. 2016), *adopted in relevant part*, 54 N.E.3d 1001 (Ind. 2016))

---

[3] Hansen asserts that Smith's testimony, especially as to the timing of the sequence of events that weekend, was inconsistent and "incredible." Appellant's Br. at 16. However, to the extent that assertion is an attempt to raise the "incredible dubiosity rule," Hansen has waived that argument by failing to cite authority for it or present cogent argument on it. Ind. Appellate Rule 46(A)(8). And, in any event, the incredible dubiosity rule does not apply here. *See, e.g.*, *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002) (quotation and citation omitted) ("Application of this rule is limited to cases . . . where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt.").

("Mere use of conditional language in the course of communicating a threat does not vitiate the statute's application when the factual predicate for the threat was a prior lawful act of the victim."), *trans. denied*. Hansen requests that we reweigh the evidence in his favor and reassess Smith's credibility on this issue but, again, we cannot do that. *Clemons*, 996 N.E.2d at 1285. The State presented sufficient evidence to support Hansen's conviction of intimidation.

[13] Affirmed.

Bailey, J., and May, J., concur.