## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2018, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anel Suarez-Torres, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 29, 2018 <br><br> Court of Appeals Case No. <br> 18A-CR-476 <br><br> Appeal from the Marion Superior <br> Court Criminal Division <br><br> The Honorable David Hooper, <br> Magistrate <br><br> Trial Court Cause Nos. <br> 49G12-1701-CM-2409 <br> 49G12-1605-CM-20156 |

**Tavitas, Judge.**

## Statement of the Case

Anel Suarez-Torres appeals her convictions for battery resulting in bodily injury, a Class A misdemeanor, and invasion of privacy, a Class A misdemeanor. We affirm.

## Issues

Suarez-Torres raises two issues on appeal, which we restate as:

1. Whether the evidence is sufficient to convict Suarez-Torres of battery resulting in bodily injury.

2. Whether the evidence is sufficient to convict Suarez-Torres of invasion of privacy.

## Facts

On April 16, 2017, Stephany Hernandez ("Stephany") went to a club in downtown Indianapolis to see Stephany's then-fiancé, Jesus Martinez ("Jesus"), perform. Stephany was accompanied by her mother, Gabriela Virgende Hernandez ("Gabriela") and Gabriela's friend. When they arrived at the club, the performance had already begun. Sometime during the performance, Stephany and Gabriela went to the restroom. On the way to the restroom, Stephany saw Suarez-Torres standing by the restroom door. Stephany and Suarez-Torres have known each other since 2011. Jesus is the father of Suarez-Torres' daughter. Gabriela and Suarez-Torres had never met. Suarez-Torres entered the restroom and attempted to speak with Stephany when Gabriela was in the restroom stall.

Stephany asked Suarez-Torres to leave multiple times while Suarez-Torres attempted to speak with her. There were about eight other people in the "very small restroom." Tr. Vol. II p. 19. When Gabriela exited the restroom stall, she asked what was going on between Stephany and Suarez-Torres. Suarez-Torres told Gabriela not to get involved in the discussion. Suarez-Torres left the restroom, and Stephany and Gabriela left a short time later. When Stephany and Gabriela exited the restroom, Gabriela walked out first.

Suddenly, Stephany saw Suarez-Torres' "hands everywhere" as she fought and "ma[de] contact" with Gabriela. *Id.* at 9-10. Gabriela felt someone "grab[] [her] by the neck" and "pull[] her hair."[1] *Id.* at 20. The person, who Gabriela did not know at the time, "almost threw [her] down." *Id.* Gabriela's "instinct was to defend" herself. *Id.* Stephany witnessed Suarez-Torres initiate contact with Gabriela.

During the altercation, Stephany tried to step between Gabriela and Suarez-Torres, but Suarez-Torres pushed Stephany away and continued to attack Gabriela. Security at the club got involved and pulled Suarez-Torres away.

Stephany and Gabriela stayed at the club to continue watching the performance. They noticed Gabriela bleeding from the shoulder and cheek and decided to leave. After leaving the club, Stephany and Gabriela went to Gabriela's house to clean her shoulder, which continued to bleed. Gabriela

---

[1] Gabriela testified through a Spanish-English interpreter, Carolina Salter.

decided she wanted to file a police report. Stephany and Gabriela went to find a police officer to file the report.

[8] Stephany and Gabriela initially went back to the club to try to find someone to file a report, but no one was at the club. Stephany and Gabriela were then directed toward a hotel where they were able to find a police officer to make a report. There, Stephany and Gabriela met Officer Jamal Abdullah of the Indianapolis Metropolitan Police Department, who took pictures and asked Gabriela questions about the altercation. Officer Abdullah observed scratch marks on Gabriela's left and right arm and on the left and right sides of her face. Officer Abdullah noted that Gabriela was very upset.

[9] The State charged Suarez-Torres with battery, a Class A misdemeanor, in Case No. 49G12-1605-CM-020156 ("the battery" charge). The Court entered a no contact order on July 28, 2016. Pursuant to the order, Suarez-Torres was to have no contact with Stephany or Gabriela, "in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly, except through an attorney of record, while released from custody pending trial." State's Ex. 1.

[10] On October 1, 2016, Stephany went to her friend's house for a baby shower from 2:30 p.m. until approximately 6:00 p.m. While at the baby shower, Stephany received three phone calls and one text. The phone calls came in quick succession – the first at 5:20 p.m., the second at 5:21 p.m., and the third at 5:28 p.m. Stephany did not recognize the number, so she rejected the first

call. When the number called a second time, Stephany answered because she "thought it was maybe important." Tr. Vol. II p. 44. When Stephany answered the phone, Suarez-Torres identified herself as the caller. Stephany told Suarez-Torres she was not supposed to be calling, and Stephany ended the call. When Suarez-Torres called for the third time, Stephany answered and reminded Suarez-Torres again that Suarez-Torres should not be calling. Suarez-Torres responded that she was looking for Jesus because Suarez-Torres "didn't know his phone number and [Suarez-Torres] was blocked off of [sic] his social media and [Suarez-Torres] just wanted for [Jesus] to pay for the child support." *Id.* at 47. Stephany hung up the phone and "didn't really have a conversation with [Suarez-Torres]." *Id*.

[11] After Stephany hung up on Suarez-Torres, Suarez-Torres sent Stephany a text message at 5:32 p.m. The text message said:

> its [sic] f***ed up you are taking the money he is making and
> how you lied but hey its [sic] fine just dont [sic] want him to pay
> anything from now on thats [sic] all i [sic] wanted to say

State's Ex. 5.

[12] The State charged Suarez-Torres with invasion of privacy, a class A misdemeanor, for violating an order issued pursuant to Indiana Code Section 35-33-8-3.2, Case No. 49G12-1701-CM-2409 ("the invasion of privacy" charge).

[13]    On February 22, 2018, the trial court conducted a bench trial for the two causes. At the bench trial, Suarez-Torres testified that Stephany, on her way to the restroom, bumped Suarez-Torres, hitting her in the side of the rib. Suarez-Torres testified that she wanted to tell Stephany that she had no problems, but that upon entering the restroom, Gabriela "got in front of Stephany and quickly started threatening" Suarez-Torres. Tr. Vol. II p. 32. Suarez-Torres stated that she left the restroom and that, when Gabriela came out of the restroom, she was screaming at Suarez-Torres. Suarez-Torres testified that she then "just felt someone pulling" her hair, and that someone "pulled her hard all the way down to the ground." *Id.* at 33. Suarez-Torres stated that after the encounter, both she and Gabriela were asked to leave. Suarez-Torres stated that she did not file a police report because she was "afraid to do that." *Id.* at 35. Suarez-Torres also stated that there was "no way" Suarez-Torres could have caused the scratching and bleeding on Gabriela because she has fibromyalgia and other medical issues. *Id.* at 30.

[14]    Suarez-Torres also testified that she contacted Stephany, despite the no contact order, because there was a medical situation regarding asthma medication for Suarez-Torres' daughter. Specifically, Suarez-Torres stated she was trying to reach Jesus that day because she "needed money to buy something that [her daughter's] Medicaid did not cover that day." *Id.* at 56. Suarez-Torres claimed that Jesus blocked Suarez-Torres from his social media accounts and that Suarez-Torres did not have Jesus' phone number. Therefore, Suarez-Torres

claims she used her mother's phone and attempted to reach Jesus through Stephany.

[15] The trial court found Suarez-Torres guilty of both the battery charge and the invasion of privacy charge. At sentencing for the battery conviction, Suarez-Torres was sentenced to a one-year sentence suspended to probation. For the invasion of privacy charge, Suarez-Torres was sentenced to time served of ten days.

## Analysis

[16] Suarez-Torres challenges the sufficiency of the evidence for both the battery conviction and the invasion of privacy conviction. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State,* 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State,* 481 N.E.2d 78, 84 (Ind. 1985)). Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*.* "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id.* (quoting *Bieghler,* 481 N.E.2d at 84)*; see also McCallister v. State,* 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."

*Love v. State,* 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007)).

### I. The Battery Conviction

[17] Suarez-Torres was first charged with battery resulting in bodily injury, a Class A misdemeanor, under Indiana Code Section 35-42-2-1. To prove that Suarez-Torres committed battery resulting in bodily injury, a Class A misdemeanor, the State was required to prove that Suarez-Torres knowingly or intentionally touched another person in a rude, insolent, or angry manner, which resulted in bodily injury to any other person beyond a reasonable doubt. *See* Ind. Code § 35-42-2-1.

[18] We cannot say that no reasonable fact finder could have found that the State met the elements of the offense beyond a reasonable doubt. Stephany testified that she saw Suarez-Torres quickly approach and fight Gabriela. Gabriela testified that a person grabbed her neck and pulled her hair. In addition, the testimony of Stephany, Gabriela, and Officer Abdullah established there was bodily injury as a result of Suarez-Torres' battery.

[19] Suarez-Torres argues that the trial court should have concluded this was a situation of "mutual combat."[2] *See Richardson v. State,* 79 N.E.3d 958, 964 (Ind. Ct. App. 2017); *see also Morell v. State,* 933 N.E.2d 484, 491 (Ind. Ct. App.

---

[2] We assume that Suarez-Torres is attempting to now argue self-defense, as "mutual combatant" is a term used to describe an individual who engages in battery as a form of self-defense. *See Morell,* 933 N.E.2d at 491. At trial, Suarez-Torres did not argue self-defense.

2010).  Suarez-Torres simply argues that "[i]t is clear in this case that the altercation appeared to be one where the testimony supports a finding of 'mutual combat' since [Suarez-Torres] states she was attacked and Stephany claims she and her mother, Gabriela, were attacked."  Appellant's Br. p. 7.  Even though Suarez-Torres' testimony regarding the events that occurred that evening conflicts with Stephany's or Gabriela's testimony, we do not, and cannot, reweigh the evidence or judge the credibility of witnesses.  *See McCallister,* 91 N.E.3d at 558.  While Suarez-Torres did provide a different account of the events that evening, it was the trial court's role to weigh that conflicting evidence.  It is not our role now.  The trial court apparently did not find Suarez-Torres' testimony regarding the events that transpired to be credible, and the trial court, as the trier of fact, is required to determine credibility.  *See Anthony v. State,* 103 N.E.3d 698, 700 (Ind. Ct. App. 2018) (citing *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 1995)) ("[w]e do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient.").  Accordingly, the evidence presented by the State was sufficient to convict Suarez-Torres of battery resulting in bodily injury.  We affirm Suarez-Torres' conviction for battery resulting in a bodily injury, a Class A misdemeanor.

## II.     The Invasion of Privacy Conviction

[20]  Suarez-Torres was also charged with invasion of privacy, a Class A misdemeanor, under Indiana Code Section 35-46-1-15.1(11) for violating an order issued pursuant to Indiana Code Section 35-33-8-3.2.  To prove that

Suarez-Torres committed invasion of privacy, a Class A misdemeanor, the State was required to prove that Suarez-Torres knowingly or intentionally violated a no contact order. Ind. Code § 35-46-1-15.1(11).

[21] "Invasion of privacy and stalking are crimes that can be accomplished by telephone calls, emails, letters, or rung doorbells." *Eisert v. State,* 102 N.E.3d 330, 334 (Ind. Ct. App. 2018), *trans. denied.* The State established, and Suarez-Torres admitted, that she contacted Stephany, in violation of the no contact order, by calling three times and by texting once. Suarez-Torres had knowledge of the no contact order.[3] Even if Suarez-Torres had denied that she made the phone call to Stephany, the State presented sufficient evidence that: (1) the initiating phone number belonged to Suarez-Torres' mother; (2) the caller identified herself as Suarez-Torres; (3) Stephany recognized the caller's voice as Suarez-Torres' voice; (4) there was a no contact order in place of which Suarez-Torres had prior knowledge; and (5) Suarez-Torres contacted Stephany anyway. This evidence was sufficient to convict Suarez-Torres of invasion of privacy, a Class A misdemeanor.

[22] Suarez-Torres claims that, despite her violation of the no contact order, she established the defense of necessity. To prevail on a necessity claim, the defendant must show:

---

[3] Suarez-Torres "does not dispute the existence of the no contact order." Appellant's Br. p. 11.

the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively reasonable under all the circumstances, and (6) the accused must not have substantially contributed to the creation of the emergency.

*Clemons v. State,* 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013) (citing *Dozier v. State,* 709 N.E.2d 27, 29 (Ind. Ct. App. 1999)), *trans denied.* Where, as here, Suarez-Torres was convicted despite her claim of necessity, "this court will reverse the conviction only if no reasonable person could say that the defense was negated by the State beyond a reasonable doubt." *Clemons,* 996 N.E.2d at 1285. The State can refute a claim of the defense "by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief." *Id.*

[23] Suarez-Torres did not present any evidence that the harm to her daughter was immediate; nor did Suarez-Torres present evidence that she had no alternative but to contact Stephany. The text message that Suarez-Torres sent to Stephany does not in any way indicate there was an emergency and, in fact, seems to indicate the calls were related to child support, instead of a medical emergency. At the very least, there does not appear to have been a significant evil that needed to be overcome. The State negated Suarez-Torres' claims that this was an immediate medical emergency by presentation of Suarez-Torres' text message to Stephany, which indicated the true purpose of the communications.

We, therefore, affirm Suarez-Torres' conviction for invasion of privacy, a Class A misdemeanor.

## Conclusion

[24] The evidence is sufficient to convict Suarez-Torres of battery resulting in bodily injury, a Class A misdemeanor, and invasion of privacy, a Class A misdemeanor. We affirm.

[25] Affirmed.

Brown, J., and Altice, J., concur.