## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 20 2020, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

James Colyer
*Appellant-Defendant,*

v.

State of Indiana
*Appellee-Plaintiff.*

August 20, 2020

Court of Appeals Case No.
20A-CR-122

Appeal from the
Brown Circuit Court

The Honorable
Mary H. Wertz, Judge

Trial Court Cause Nos.
07C01-1907-CM-248

**Kirsch, Judge.**

[1] James Colyer ("Colyer") was convicted of criminal trespass[1] as a Class A misdemeanor following a jury trial and was sentenced to sixty days executed. Colyer now appeals and raises the following issue for our review: whether the evidence presented at trial was sufficient to support his conviction for criminal trespass.

[2] We affirm.

## Facts and Procedural History

[3] Joe McGlothlin ("McGlothlin") was the director of operations at a wood framing business called The Beamery in Brown County, Indiana. *Tr. Vol. 2* at 65, 166. On June 24, 2019, McGlothlin saw a man (whom he identified as Colyer at trial) and a woman walking around the storage yard where The Beamery's trucks and trailers were parked. *Id.* at 71-72, 84, 90. McGlothlin knew that they were not employees of The Beamery and noticed that the man was wearing an ankle monitor. *Id.* at 88. Being concerned about the two strangers, McGlothlin watched them and made his presence known by standing at a door. *Id.* at 71-72. Colyer and the woman walked off when they saw McGlothlin. *Id.* About an hour later, McGlothlin saw Colyer and the woman lingering on the property again and told them to leave. *Id.* at 73. As Colyer was walking away, he approached a storage facility where The Beamery kept its inventory and pulled on the door. *Id.* The door did not open. *Id.* McGlothin

---

[1] *See* Ind. Code § 35-43-2-2(b).

approached Colyer and the woman and told them again that they had to leave. *Id.* Colyer and the woman walked away while laughing. *Id.* at 74.

[4] The Beamery shares a building on the property with a wood flooring company named Quarter-Sawn Flooring ("Quarter-Sawn"), owned by Steve Edwards ("Edwards"). *Id.* at 68-71. On June 24, 2019, when Edwards arrived on the property, he saw Colyer coming from the shared property. *Id.* at 135. Edwards inquired as to why Colyer was there, but Colyer expressed to Edwards that he did not want to talk. *Id.* at 135-36.

[5] Later in the day, McGlothlin and Edwards told each other about their interactions with Colyer. *Id.* at 136-37. McGlothlin called the Sheriff's Department, reporting Colyer's trespassing on the property of The Beamery and Quarter-Sawn. *Id.* at 88. Brown County Sheriff's Deputy Nicholson Briles ("Deputy Briles") was dispatched to The Beamery's address. *Id.* at 99. Edwards spoke with Deputy Briles and told him that a person wearing black shorts, a black tee shirt, and an ankle monitor had trespassed on the property of the The Beamery and Quarter-Sawn. *Id.* at 100. Edwards told Deputy Briles that the person had left the property and walked west on State Road 45. *Id.* at 101. Deputy Briles then drove in that direction and found a man who matched Edwards's description of the trespasser. *Id.* at 101. Deputy Briles approached the man and confirmed his identity as Coyler. *Id.* at 102. Coyler admitted that he had been on The Beamery and Quart-Sawn's property. *Id.* Coyler said that he was on home detention and was trying to get a signal for his ankle monitor there. *Id.* Deputy Briles explained to Coyler that it was not his property and

that "if he wasn't welcome there he shouldn't be on . . . the property." *Id.* at 103. After confirming back with Edwards that he wanted to have Colyer trespassed, Deputy Briles told Coyler that he was "no longer welcome on that property" and if he returned there, he "could be arrested for trespassing." *Id.* at 103, 105.

[6] However, Colyer continued coming to the property of The Beamery and Quarter-Sawn even after being warned by Deputy Briles about the potential consequence of an arrest. *Id.* at 89, 138. At trial, Edwards testified that between June 24 and July 13, 2019, he saw Colyer on the property between five to seven times; McGlothlin saw Colyer on the property three or four times in the same time period. *Id.* Two Quarter-Sawn employees also observed Colyer on the property on multiple occasions. *Id.* at 112, 149. Both Edwards and McGlothin told Colyer that he was not allowed on the property and not to come back. *Id.* at 90, 138. Multiple signs were on the property that prohibited entry onto the property by non-employees, and Colyer had never asked for permission to be on the property. *Id.* at 73, 81, 89, 133, 140-41.

[7] On July 13, 2019, Edwards saw Colyer on the property of The Beamery and Quarter-Sawn again and asked him what he was doing. *Id.* at 138. Colyer claimed that "Mike Horn" said he could be there. *Id.* Edwards did not know anyone named Mike Horn and called the Sheriff's Department. *Id.* at 139. Deputy William Pool ("Deputy Pool") was dispatched to the scene. *Id.* at 155. Colyer told Deputy Pool that Deputy Horn, whose first name is Mike, from the Brown County Sheriff's Department had given him permission to be on the

property of The Beamery and Quarter-Sawn. *Id.* at 157. Deputy Pool made a phone call while at the scene and confirmed that Deputy Horn had never spoken with Colyer. *Id.* Colyer was then arrested. *Id.* at 139. On July 22, 2019, Colyer was charged with Class A misdemeanor criminal trespass. *Appellant's App. Vol. 2* at 13.

[8] A jury trial was held on November 6, 2019. *Tr. Vol. 2* at 38. At trial, there was testimony that, during the time period when Colyer was coming to The Beamery and Quarter-Sawn's property, he was living with his father John Colyer ("Father") in Brown County and was on home detention ordered by Marion County Community Corrections ("MCCC"). *Id.* at 192, 232-33. Colyer testified that he understood that under the MCCC rules he was required to stay in Father's house. *Id.* at 235. He also testified that he had been unable to get a signal for his ankle monitor at Father's house since the first night of moving in. *Id.* at 239. Colyer said that MCCC called him on the first night about a signal issue and asked him to step outside. *Id.* He then walked around while continuing the phone call and eventually got signal on Quarter-Sawn's property. *Id.* 240, 245. Colyer admitted at trial that he could get the signal at two other locations, but the signal at those locations was intermittent. *Id.* at 241.

[9] At the conclusion of the trial, the jury found Colyer guilty of Class A misdemeanor criminal trespass. *Tr. Vol. 3* at 109. The trial court sentenced Colyer to sixty days executed. *Id.* at 129. Colyer now appeals.

# Discussion and Decision

[10] Colyer contends the State did not present sufficient evidence to support his conviction. When we review the sufficiency of evidence to support a conviction, we do not reweigh the evidence or assess the credibility of the witnesses. *Lehman v. State*, 55 N.E.3d 863, 868 (Ind. Ct. App. 2016), *trans. denied.* We consider only the evidence most favorable to the trial court's ruling and the reasonable inferences that can be drawn from that evidence. *Lock v. State,* 971 N.E.2d 71, 74 (Ind. 2012). We also consider conflicting evidence in the light most favorable to the trial court's ruling. *Oster v. State,* 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied.* A conviction will be affirmed if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Wolf v. State*, 76 N.E.3d 911, 915 (Ind. Ct. App. 2017).

[11] In order to convict Colyer of Class A misdemeanor criminal trespass, the State was required to prove beyond a reasonable doubt that Colyer, (1) not having a contractual interest in the property, (2) knowingly or intentionally entered the real property of another person, (3) after having been denied entry by the other person or that person's agents. Ind. Code § 35-43-2-2(b)(1). On appeal, Colyer does not dispute that he had trespassed on Quarter-Sawn and The Beamery's property. *Appellant's Br.* at 12. Instead, he argues that he did so because of necessity and that the State failed to present sufficient evidence to rebut his defense of necessity. *Id.* This court has set forth the following requirements to establish a necessity defense:

(1) the act charged as criminal must have been done to prevent a significant evil;

(2) there must have been no adequate alternative to the commission of the act;

(3) the harm caused by the act must not be disproportionate to the harm avoided;

(4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm;

(5) such belief must be objectively reasonable under all the circumstances; and

(6) the accused must not have substantially contributed to the creation of the emergency.

*Clemons v. State*, 996 N.E.2d 1282, 1285 (Ind. Ct. App. 2013) (citations omitted), *trans. denied*. In order to negate a necessity defense, the State must disprove at least one of the six elements beyond reasonable doubt. *Clemons*, 996 N.E.2d at 1285. The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id.* The decision whether a claim of necessity has been disproved is entrusted to the fact-finder. *Id.* Where a defendant is convicted despite his claim of necessity, this court will reverse the conviction only if no reasonable person could find that the defense was negated by the State beyond a reasonable doubt. *Id.*

[12] Colyer contends that his trespassing was necessary to prevent his potential incarceration if he could not get a signal for his ankle monitor. *Appellant's Br.* at 14. Colyer argues that the fear of incarceration qualifies as the "significant evil" set out in the first of the elements and that there was "no adequate alternative" because The Beamery and Quarter-Sawn's property was the only place where he could get stable signal that was within his walking distance. *Id.*

[13] However, our review of the record shows that, Colyer could in fact get a signal from at least two other locations. He never sought permission to be on the property of The Beamery and Quarter-Sawn or talked to MCCC about accommodating his trouble getting signal at Father's house. Therefore, a reasonable jury could have found that his trespassing on The Beamery and Quarter-Sawn's property was not "necessary." *See Clemons*, 996 N.E.2d at 1285. Furthermore, while on home detention, Colyer knew that he was not allowed to leave Father's house. Although Coyler claimed at trial that MCCC told him to step out of the house to get signal, the jury was not required to credit his testimony. *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004). He had also been warned multiple times by Deputy Briles, Edwards, and McGlothlin that he was not welcome on the property, and if he continued to trespass, he could be arrested for criminal trespass. Colyer could not have believed in good faith that he could avoid incarceration by committing criminal trespass in addition to violating the home detention order by leaving Father's house. *See Clemons*, 996 N.E.2d at 1285. Moreover, Colyer's belief was not "objectively reasonable" even if he had honestly thought so, because the

aggregate harm of the two trespassing offenses was "disproportionate" to the harm he was trying to avoid. *See id.*

[14] Based on this, we determine that a reasonable jury could have concluded beyond a reasonable doubt that Colyer's claim of necessity had been disproved. We, therefore, conclude that the State presented sufficient evidence to support Colyer's conviction for criminal trespass.

[15] Affirmed.

Pyle, J., and Tavitas, J., concur.